1   SCHIFF HARDIN LLP
    JOHN S. WORDEN (SBN 142943)
2   jworden@schiffhardin.com
    JEAN-PAUL P. CART (SBN 267516)
3   jcart@schiffhardin.com
    One Market
4   Spear Street Tower, Suite 3200
    San Francisco, CA  94105
5   Telephone:    415.901.8700
    Facsimile:    415.901.8701
6
    Attorneys for Plaintiff
7   Rene Heredia

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11  RENE HEREDIA,                          Case No.

12                 Plaintiff,              **COMPLAINT**

13  v.

14  INTUITIVE SURGICAL, INC.,

15                 Defendant.

16

17

18       Plaintiff Rene Heredia ("Dr. Heredia") brings these claims for relief against Defendant

19  Intuitive Surgical, Inc. ("Intuitive") and alleges as follows:

20                    **NATURE OF DR. HEREDIA'S CLAIMS**

21       1.      Dr. Heredia's claims are for conversion, breach of contract, fraudulent

22  misrepresentation, fraudulent concealment and negligent misrepresentation.

23       2.      Dr. Heredia is a highly-respected urologist and surgeon practicing in Santa Cruz,

24  Bolivia.  His claims stem from what will be the undisputed facts that he paid over $2,000,000 to

25  purchase Intuitive's *da Vinci* surgical robot system, received absolutely nothing in return, and has

26  been unable to recover at least $850,000 of the money he paid.  Dr. Heredia first contacted

27  Intuitive regarding the purchase of a *da Vinci* system in 2011.  Intuitive's representative explicitly

28  told Dr. Heredia they would sell him the *da Vinci* system if he paid the purchase price to

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Intuitive's agent and exclusive distributor for Bolivia, DeLeC Cientifica Argentina SA

2    ("DeLeC"). Dr. Heredia then did exactly what Intuitive told him to do: he contacted DeLeC to

3    purchase Intuitive's *da Vinci* system. DeLeC, in turn, directed Dr. Heredia to order the *da Vinci*

4    system through its own agent and exclusive distributor for Bolivia, Trimedical Bolivia

5    ("Trimedical"). Dr. Heredia, again, did exactly what he was told to do and placed an order for

6    Intuitive's *da Vinci* system through Trimedical in July 2012.

7         3.      After placing his order as instructed by Intuitive, Dr. Heredia began making

8    installment payments on the agreed-upon $2,744,000 purchase price. By May 2013, Dr. Heredia

9    had already paid $2,000,096. Thereafter, Dr. Heredia was shocked to learn that, of the

10    $2,000,096 paid, DeLeC claimed it had received only $850,000. Dr. Heredia already successfully

11    sued Trimedical and will likely recover much of the $1,150,096 it misappropriated. This lawsuit

12    concerns the $850,000 that is still in the possession of Intuitive or its agent, DeLeC.

13         4.      Despite the fact that Dr. Heredia has done exactly what Intuitive and its agents

14    have told him to do, Intuitive refuses to return Dr. Heredia's $850,000.

15                                          **PARTIES**

16         5.      Dr. Heredia is a resident of Bolivia.

17         6.      Intuitive is a Delaware corporation headquartered in Sunnyvale, California.

18                          **JURISDICTION AND VENUE**

19         7.      Jurisdiction is proper under 28 U.S.C. § 1132 because the parties are diverse.

20         8.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391, as

21    Intuitive is headquartered within the District and is subject to personal jurisdiction in the District.

22             **THE FACTS ENTITLING DR. HEREDIA TO RELIEF**

23         9.      Dr. Heredia is a distinguished and highly-respected urologist and surgeon.

24    Residing in Bolivia, he is a recognized leader in his field and has traveled throughout South

25    America and the United States for decades participating in national and international medical

26    conferences.

27

28

10.     Dr. Heredia first learned of Intuitive's *da Vinci* system after having seen Intuitive's booths at medical conferences.  Intuitive's *da Vinci* system is essentially a complex surgeon-controlled robot designed to assist surgeons such as Dr. Heredia with various types of procedures.

11.     Despite the high cost of Intuitive's *da Vinci* system, nearly $2.75 million, Dr. Heredia decided in 2012 to purchase the system for the medical clinic he works in.

12.     At the May 2011 annual meeting of the American Urological Association in Washington, D.C., Dr. Heredia sought out Intuitive's representatives to discuss his purchase of the *da Vinci* system.  Specifically, Dr. Heredia spoke with Vanessa Owens and Jesus Delgado, both of whom are representatives of Intuitive.

13.     Ms. Owens and Mr. Delgado stated that Intuitive would sell the *da Vinci* system to Dr. Heredia, but, because Dr. Heredia resided in Bolivia, he needed to pay for the *da Vinci* system through Intuitive's agent and exclusive distributor for that territory, DeLeC.

14.     Dr. Heredia then did as he was instructed and contacted DeLeC's president, Carlos Lecour.

15.     Dr. Heredia is informed and believes that at all relevant times Mr. Lecour was also an officer or employee of Intuitive.

16.     In the months that followed, Mr. Lecour visited Dr. Heredia's clinic in Santa Cruz, Bolivia and delivered an extensive presentation demonstrating Intuitive's *da Vinci* system and its capabilities.  At this presentation, Mr. Lecour provided Dr. Heredia with detailed marketing and performance literature regarding Intuitive and the *da Vinci* system.  The presentation and literature was produced by Intuitive for use by DeLeC with Dr. Heredia and others.

17.     Mr. Lecour then informed Dr. Heredia that the order must be placed through DeLeC's agent and Intuitive's exclusive sub-distributor for Bolivia, Trimedical.

18.     Dr. Heredia again did as he was instructed and contacted Trimedical.  And in July 2012, he entered into a $2,744,000 Purchase and Sale Agreement for Intuitive's *da Vinci* system.

19.     Soon thereafter, and as instructed by Intuitive and its agent, Dr. Heredia began making the agreed-upon installment payments to Trimedical.  By May 2013, these payments had totaled $2,000,096.

20.     At a 2013 annual meeting of the American Urological Association in San Diego, California, Dr. Heredia visited Intuitive's booth—which was staffed by Mr. Lecour—and made a shocking discovery.  Despite the fact that Dr. Heredia had paid over $2,000,000, Mr. Lecour informed him that DeLeC had received only $850,000 from Trimedical.

21.     After learning that Trimedical had misappropriated over $1,150,000 he had paid for the *da Vinci* system, Dr. Heredia refused to make any further payments and sued Trimedical in Bolivia, resulting in a settlement by which Trimedical is making installment payments on the funds it wrongful failed to transfer to its principal, DeLeC.

22.     Unfortunately, DeLeC and/or Intuitive now inexplicably refuse to return Dr. Heredia's $850,000.

23.     DeLeC has admitted several times that it received $850,000 of Dr. Heredia's funds.  And it has similarly admitted that it is currently in possession of the funds.

24.     At one point, Mr. Lecour, stated that he would return Dr. Heredia's money, but would have to deduct 8-11% as a "cost of doing business."

25.     At all relevant times herein, Intuitive has cloaked DeLeC with actual and ostensible authority to act on its behalf with regard to potential buyers of its *da Vinci* system.  In addition to directly referring Dr. Heredia to DeLeC, Intuitive states on its website that potential buyers from Argentina, Uruguay and Paraguay—apparently Intuitive no longer allows the *de Vinci* system to be sold in Bolivia—must direct all inquiries to DeLeC.  Moreover, Intuitive has staffed its booths at medical conference with employees of DeLeC, which then distribute Intuitive's official marketing materials.

### FIRST CLAIM

(Conversion)

26.     Dr. Heredia hereby incorporates by reference paragraphs 1-25 of this Complaint as though fully set forth herein.

27.     Between July 2012 and May 2013, Dr. Heredia paid $2,000,096 towards the total $2,744,000 purchase price of Intuitive's *da Vinci* system.

28.     Dr. Heredia never ultimately received anything in exchange for the $2,000,096 he paid.

29.     In 2013, Dr. Heredia stopped making payments toward the purchase of Intuitive's *da Vinci* system after Intuitive's agent and exclusive distributor, DeLeC, by and through DeLeC's president and Intuitive's representative, Mr. Lecour, repudiated and anticipatorily breached the agreement.

30.     Of the $2,000,096 paid by Dr. Heredia for Intuitive's *da Vinci* system, DeLeC and Intuitive are currently in possession of at least $850,000.

31.     Despite several demands, Intuitive has wrongfully refused to return Dr. Heredia's $850,000.

32.     As DeLeC has at all relevant times acted as an agent of Intuitive, its authority to act on Intuitive's behalf being either actual or ostensible, Intuitive's liability is both direct and vicarious.  Additionally, as Intuitive specifically instructed Dr. Heredia to place its order for the *da Vinci* system with DeLeC, Intuitive is also subject to liability based upon aiding and abetting principles.

33.     As a direct and proximate result of DeLeC and Intuitive's conversion of Dr. Heredia's property, with Intuitive being vicariously liable for the wrongful acts of DeLeC, Dr. Heredia has been damaged by the loss of the $850,000 that is being wrongfully held.

34.     Therefore, Dr. Heredia requests that the Court enter judgment against Intuitive in an amount to be determined, along with any other relief available at law or in equity.

## SECOND CLAIM

### (Breach of Contract)

35.     Dr. Heredia hereby incorporates by reference paragraphs 1-34 of this Complaint as though fully set forth herein.

36.     In May 2011, Intuitive agreed to sell Dr. Heredia the *da Vinci* system if he placed his order through its agent and exclusive distributor, DeLeC.

37.     Dr. Heredia accepted Intuitive's offer and agreed to purchase the *da Vinci* system for $2,744,000, with the funds being paid through DeLeC.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      38.    Dr. Heredia then began making the agreed-upon installment payments. By May

2    2013, Dr. Heredia had already made payments totaling $2,000,096.

3      39.    But, later in 2013, Dr. Heredia was then told by Intuitive's agent and

4    representative, Mr. Lecour, that due to no fault or breach by Dr. Heredia, Intuitive and its agents

5    would not perform under the contract.

6      40.    Notwithstanding the fact that Dr. Heredia had satisfied all of his obligations under

7    his agreement to purchase Intuitive's *da Vinci* system, only to have Intuitive and its agents

8    repudiate the contract, Intuitive and its agents have refused to return the funds actually paid by

9    Dr. Heredia.

10      41.    While Dr. Heredia has been able to recover some of the funds he paid, Intuitive

11    and/or DeLeC remain in wrongful possession of at least $850,000.

12      42.    As DeLeC has at all relevant times acted as an agent of Intuitive, its authority to

13    act on Intuitive's behalf being either actual or ostensible, Intuitive's liability is both direct and

14    vicarious.

15      43.    Dr. Heredia has satisfied all contractual obligations on his part except to the extent

16    he has been prevented from doing so by Intuitive.

17      44.    As a direct and proximate result of the breach of Dr. Heredia's agreement to

18    purchase Intuitive's *da Vinci* system, Dr. Heredia has been damaged in an amount to be

19    determined at trial.

20      45.    Therefore, Dr. Heredia requests that the Court enter judgment against Intuitive in

21    an amount to be determined, along with any other relief available at law or in equity.

22                            **THIRD CLAIM**

23             (Fraudulent Misrepresentation – Vicarious Liability)

24      46.    Dr. Heredia hereby incorporates by reference paragraphs 1-45 of this Complaint as

25    though fully set forth herein.

26      47.    In July 2012, Dr. Heredia entered into an agreement with Trimedical, DeLeC's

27    agent and sub-distributor, for the purchase of Intuitive's *da Vinci* system for $2,744,000.

28

48.     Following execution of his agreement to purchase Intuitive's *da Vinci* system, Dr. Heredia made installment payments to Trimedical totaling $2,000,096.

49.     As Dr. Heredia learned in 2013, Trimedical only delivered $850,000 of Dr. Heredia's payments to DeLeC, while misappropriating the remainder.

50.     Notwithstanding the fact that Dr. Heredia had satisfied all of his obligations under his agreement to purchase Intuitive's *da Vinci* system, DeLeC and Intuitive indicated that they would neither deliver the *da Vinci* system nor return any of the funds paid by Dr. Heredia.

51.     While Dr. Heredia has been able to recover some of the funds he initially paid to Trimedical, DeLeC remains in possession of an additional $850,000 paid by Dr. Heredia—for which it has given absolutely nothing in return.

52.     As made clear by its conduct, DeLeC never intended to honor Dr. Heredia's agreement to purchase Intuitive's *da Vinci* system.  Rather, at the time Dr. Heredia entered into the agreement, DeLeC intended to misappropriate any and all funds it received by way of Dr. Heredia.

53.     Additionally, DeLeC intentionally misled Dr. Heredia regarding Trimedical's integrity and business acumen.  Specifically, DeLeC assured Dr. Heredia that it was safe to place his order through its agent, Trimedical, knowing full well that these representations were false.

54.     In making the aforementioned misrepresentations, DeLeC intended for Dr. Heredia to rely, and he did rely, on such misrepresentations in entering into the agreement to purchase Intuitive's *da Vinci* system.

55.     As DeLeC has at all relevant times acted as an agent of Intuitive, its authority to act on Intuitive's behalf being either actual or ostensible, Intuitive is vicariously liable for DeLeC's wrongful conduct under the principles of agency liability and/or respondeat superior.  Additionally, as Intuitive specifically instructed Dr. Heredia to place its order for the *da Vinci* system with DeLeC, Intuitive is also subject to liability based upon aiding and abetting principles.

56.     As a direct and proximate result of DeLeC's fraudulent misrepresentations, for which Intuitive is liable, Dr. Heredia has been damaged in an amount to be determined at trial.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -

57.     Therefore, Dr. Heredia requests that the Court enter judgment against Intuitive in an amount to be determined, along with any other relief available at law or in equity.

### FOURTH CLAIM

(Fraudulent Misrepresentation – Direct Liability)

58.     Dr. Heredia hereby incorporates by reference paragraphs 1-57 of this Complaint as though fully set forth herein.

59.     In May 2011, Dr. Heredia contacted Intuitive representatives Vanessa Owens and Jesus Delgado regarding the purchase of the *da Vinci* system. After an extensive sales pitch regarding the capabilities of the system, Dr. Heredia indicated that he wished to purchase the system for his clinic in Bolivia.

60.     Ms. Owens and Mr. Delgado then informed Dr. Heredia that he had no choice but to place his order through Intuitive's agent and exclusive distributor, DeLeC.

61.     At this time, Ms. Owens and Mr. Delgado assured Dr. Heredia that DeLeC was— like all of its agents and exclusive distributors—competent, trustworthy and able to complete the transaction. These assurances by Ms. Owens and Mr. Delgado were false, although Dr. Heredia did not learn of their falsity until late 2013 or later.

62.     At this time, and with Intuitive's full knowledge and approval, DeLeC had entered into a sub-distribution agreement with Trimedical. Unfortunately, neither DeLeC nor Trimedical are honest or competent businesses. Rather, Trimedical stole over $1,150,000 from Dr. Heredia, while DeLeC stole $850,000.

63.     Dr. Heredia is informed and believes that, in light of a long history of complaints, Intuitive is considering terminating its relationship with DeLeC. Thus, at the time Intuitive assured Dr. Heredia that it was safe to conduct business with DeLeC, Intuitive was well aware that numerous customers had expressed serious concerns regarding DeLeC. None of these concerns or prior complaints were disclosed to Dr. Heredia.

64.     Indeed, despite the fact that Intuitive may soon terminate its relationship with DeLeC—and reflecting an ongoing pattern of misleading consumers regarding the quality and

capabilities of its agents and exclusive distributors—Intuitive continues to direct potential customers to DeLeC with no warnings regarding its past misconduct and fraud.

65.     In making the aforementioned misrepresentations, Intuitive intended for Dr. Heredia to rely, and he did rely, on such misrepresentations in entering into the agreement to purchase Intuitive's *da Vinci* system.

66.     As a direct and proximate result of Intuitive's fraudulent misrepresentations, Dr. Heredia has been damaged in an amount to be determined at trial.

67.     Therefore, Dr. Heredia requests that the Court enter judgment against Intuitive in an amount to be determined, along with any other relief available at law or in equity.

### FIFTH CLAIM

#### (Fraudulent Concealment)

68.     Dr. Heredia hereby incorporates by reference paragraphs 1-67 of this Complaint as though fully set forth herein.

69.     In May 2011, Dr. Heredia contacted Intuitive representatives Vanessa Owens and Jesus Delgado regarding the purchase of the *da Vinci* system. After an extensive sales pitch regarding the capabilities of the system, Dr. Heredia indicated that he wished to purchase the system for his clinic in Bolivia.

70.     Ms. Owens and Mr. Delgado then informed Dr. Heredia that he had no choice but to place his order through Intuitive's agent and exclusive distributor, DeLeC.

71.     At this time, Ms. Owens and Mr. Delgado assured Dr. Heredia that DeLeC was—like all of its agents and exclusive distributors—competent, trustworthy and able to complete the transaction. These assurances by Ms. Owens and Mr. Delgado were false, although Dr. Heredia did not learn of their falsity until 2013.

72.     At this time, and with Intuitive's full knowledge and approval, DeLeC had entered into a sub-distribution agreement with Trimedical. Unfortunately, neither DeLeC nor Trimedical are honest or competent businesses. Rather, Trimedical stole over $1,150,000 from Dr. Heredia, while DeLeC stole $850,000.

73.     Dr. Heredia is informed and believes that, in light of a long history of complaints, Intuitive is considering terminating its relationship with DeLeC.  Thus, at the time Intuitive assured Dr. Heredia that it was safe to conduct business with DeLeC, Intuitive was well aware that numerous customers had expressed serious concerns regarding DeLeC.  None of these concerns or prior complaints was disclosed to Dr. Heredia.

74.     Indeed, despite the fact that Intuitive may soon terminate its relationship with DeLeC—and reflecting an ongoing pattern of misleading consumers regarding the quality and capabilities of its agents and exclusive distributors—Intuitive continues to direct potential customers to DeLeC with no warnings regarding its past misconduct and fraud.

75.     Intuitive knew, or acted in reckless disregard of the fact, that if it disclosed such information, as required, Dr. Heredia would not have agreed to purchase Intuitive's *da Vinci* through Intuitive's agent and exclusive distributor, DeLeC.

76.     As a direct and proximate result of the breach of Intuitive's fraudulent concealment, Dr. Heredia has been damaged in an amount to be determined at trial.

77.     Therefore, Dr. Heredia requests that the Court enter judgment against Intuitive in an amount to be determined, along with any other relief available at law or in equity.

## SIXTH CLAIM

### (Negligent Misrepresentation)

78.     Dr. Heredia hereby incorporates by reference paragraphs 1-77 of this Complaint as though fully set forth herein.

79.     In May 2011, Dr. Heredia contacted Intuitive representatives Vanessa Owens and Jesus Delgado regarding the purchase of the *da Vinci* system.  After an extensive sales pitch regarding the capabilities of the system, Dr. Heredia indicated that he wished to purchase the system for his clinic in Bolivia.

80.     Ms. Owens and Mr. Delgado then informed Dr. Heredia that he had no choice but to place his order through Intuitive's agent and exclusive distributor, DeLeC.

81.     At this time, Ms. Owens and Mr. Delgado assured Dr. Heredia that DeLeC was— like all of its agents and exclusive distributors—competent, trustworthy and able to complete the

1   transaction.  These assurances by Ms. Owens and Mr. Delgado were false, and at the very least

2   were made without reasonable grounds to believe they were true, a fact Dr. Heredia did not

3   discover until 2013.

4        82.     At this time, and with Intuitive's full knowledge and approval, DeLeC had entered

5   into a sub-distribution agreement with Trimedical.  Unfortunately, neither DeLeC nor Trimedical

6   are honest or competent businesses.  Rather, Trimedical stole over $1,150,000 from Dr. Heredia,

7   while DeLeC stole $850,000.

8        83.     Dr. Heredia is informed and believes that, in light of a long history of complaints,

9   Intuitive is considering terminating its relationship with DeLeC.  Thus, at the time Intuitive

10  assured Dr. Heredia that it was safe to conduct business with DeLeC, Intuitive was well aware

11  that numerous customers had expressed serious concerns regarding DeLeC.  None of these

12  concerns or prior complaints was disclosed to Dr. Heredia.

13       84.     Indeed, despite the fact that Intuitive may soon terminate its relationship with

14  DeLeC—and reflecting an ongoing pattern of misleading consumers regarding the quality and

15  capabilities of its agents and exclusive distributors—Intuitive continues to direct potential

16  customers to DeLeC with no warnings regarding its past misconduct and fraud.

17       85.     In making the aforementioned misrepresentations, Intuitive intended for Dr.

18  Heredia to rely, and he did rely, on such misrepresentations in entering into the agreement to

19  purchase Intuitive's *da Vinci* system.

20       86.     As a direct and proximate result of Intuitive's fraudulent misrepresentations, Dr.

21  Heredia has been damaged in an amount to be determined at trial.

22       87.     Therefore, Dr. Heredia requests that the Court enter judgment against Intuitive in

23  an amount to be determined, along with any other relief available at law or in equity.

24                          **PRAYER FOR RELIEF**

25       WHEREFORE, Dr. Heredia prays for judgment against Intuitive as follows:

26       1.      Compensatory, actual, incidental, consequential, punitive and all other damages to

27  which he is entitled; and

28       2.      Any other appropriate legal, equitable, injunctive and declaratory relief.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**JURY DEMAND**

2

Dr. Heredia hereby demands a jury trial in this matter of all issue so triable.

3

4          Dated:  June 12, 2015                          SCHIFF HARDIN LLP

5

6

7          By: _____
                John S. Worden
8                Attorneys for Plaintiff
                 Rene Heredia
9

10         SF\321475991.3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28