SINGER / BEA LLP
  Adam Cashman (Bar No. 255063)
  acashman@singerbea.com
  Renée B. Bea (Bar No. 268807)
  rbea@singerbea.com
  Doug Tilley (Bar No. 265997)
  dtilley@singerbea.com
601 Montgomery Street, Suite 1950
San Francisco, California  94111
Telephone:      (415) 500-6080
Facsimile:      (415) 500-6080

*Attorneys for Defendant Intuitive Surgical, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENE HEREDIA,<br><br>               Plaintiff,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>          Defendant. | CASE NO. 15-CV-02662-EJD<br><br>**INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:     June 2, 2016 at 9:00 am<br>Original Filing Date:  June 12, 2015<br>Trial Date:        None Set |

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................................................................... 1

I.   FACTUAL AND PROCEDURAL BACKGROUND............................................. 2

   A.   The Parties............................................................................................................ 2

   B.   Dr. Heredia's Original Complaint........................................................................ 3

   C.   Dr. Heredia's Amendments.................................................................................. 4

II.   LEGAL STANDARDS........................................................................................... 5

   A.   Dr. Heredia Must Plead Facts Showing "Facially Plausible" Claims that State "Cognizable" Legal Theories............................................................................... 5

   B.   Heightened Pleading Standard for Fraud-Based Claims...................................... 5

   C.   Necessary and Indispensable Parties Under Rule 19 ........................................... 6

III.   ARGUMENT .......................................................................................................... 7

   A.   Each of Dr. Heredia's Claims Fails as a Matter of Law ..................................... 7

      1.   Intuitive May Not Be Held Liable for DeLeC's Alleged Conversion ......................... 7

      2.   Intuitive Is Not Liable for DeLeC's Alleged Fraud ..................................... 9

         a.   Dr. Heredia Has Not Sufficiently Pleaded Any Fraud by DeLeC ..................... 9

         b.   Dr. Heredia Has Not Pleaded a Valid Theory of Vicarious Liability ................... 11

            i.   Dr. Heredia Has Failed to Plausibly Allege That DeLeC was Intuitive's Agent ............................................................................... 11

            ii.   Dr. Heredia's Other Vicarious Liability Theories Fail .................................. 14

      3.   Dr. Heredia Has Not Pleaded with Particularity Any Fraud by Intuitive ..................... 14

         a.   No Actionable Fraudulent or Negligent Misrepresentation by Intuitive ............. 15

         b.   No Actionable Fraudulent Concealment by Intuitive ............................................ 18

   B.   The FAC Must Be Dismissed Because DeLeC is an Indispensable Party That Cannot Be Joined ............................................................................................... 18

      1.   DeLeC is a Necessary Party............................................................................... 18

         a.   The Court Cannot Accord Complete Relief in DeLeC's Absence ...................... 20

         b.   DeLeC's Interest in the Subject of this Action Requires Its Participation........... 20

      2.   Although Necessary to this Action, DeLeC Cannot Feasibly Be Joined.................... 21

3.   This Litigation May Not Proceed in DeLeC's Absence ............................................ 21

    a.   Risk of Prejudice to Absent Party DeLeC............................................. 22

    b.   Risk of Prejudice to Intuitive ................................................................... 23

    c.   There is No Way to Lessen or Avoid the Prejudice to DeLeC and Intuitive........ 24

    d.   No Judgment Rendered in DeLeC's Absence Could be Adequate....................... 24

    e.   Dr. Heredia Will Have Adequate Remedies if This Action is Dismissed ............ 24

C.   Leave to Amend Should be Denied .............................................................................. 25

CONCLUSION ....................................................................................................................... 25

singer/bea<sub>LLP</sub>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 15-CV-02662-EJD

# TABLE OF AUTHORITIES

## CASES

*Acacia Corp. Mgmt., LLC v. United States*,
2013 U.S. Dist. LEXIS 82959 (E.D. Cal. June 11, 2013) ............................................. 18, 20

*Acton Co., Inc. v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir. 1982) ................................ 22

*AE v. County of Tulare*, 2010 U.S. Dist. LEXIS 34109 (E.D. Cal. Apr. 7, 2010) ............................ 12

*Armato v. Baden*, 71 Cal.App.4th 885 (1999) ............................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 5, 11

*Baba v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan. 28, 2011) .................... 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... 5, 11, 13, 16

*Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 9, 2010) ...................... 16

*Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011) ........................... passim

*Chiu v. Mann*, 2003 U.S. Dist. LEXIS 2758 (N.D. Cal. Feb. 25, 2003) ............................... 19

*Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477 (7th Cir. 2001) ................................... 7

*Dimas, LLC v. Inv. Grade Loans*,
2007 Bankr. LEXIS 2516 (U.S. Bankr. N.D. Cal. July 23, 2007) ..................................... 13

*Eddy v. Sharp*, 199 Cal.App.3d 858 (1988) ........................................................ 15, 17

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*,
224 F.R.D. 661 (W.D. Wash. Oct. 7, 2004) ..................................................... passim

*Faysound, Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290 (9th Cir. 1989) .................... 21

Federal Rule of Civil Procedure 45 ................................................................ 23

*Fisher v. Honda N. Am.*, 2014 U.S. Dist. LEXIS 84570 (C.D. Cal. June 12, 2014) .................... 16

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................. 25

*Freeman v. NW. Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985) ................................... 6, 19

*Garcia v. Clovis Unified Sch. Dist.*, 2009 U.S. Dist. LEXIS 83352 (E.D. Cal. Sept. 11, 2009) ........ 14

*Gerritsen v. Warner Bros. Entm't Inc.*, 2015 U.S. Dist. LEXIS 84978 (S.D. Cal. Jan. 30, 2015) . 5, 10

*Hi-Tech Gaming.com Ltd. v. IGT*, 2008 U.S. Dist. LEXIS 93740 (D. Nev. Nov. 18, 2008) . 18, 20, 22

*Imageline, Inc. v. CafePress.com Inc.*, 2011 U.S. Dist. LEXIS 39828 (C.D. Cal. Apr. 6, 2011) ...... 12

*In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889 (N.D. Cal. 2012) ...................... 19

**singer/bea** LLP

*In re Torres*, 2005 U.S. Dist. LEXIS 34672 (C.D. Cal.  July 11, 2005) ............................................. 12

*In re Toyota Motor Corp.*, 785 F.Supp.2d 883 (C.D. Cal. 2011) ................................................. passim

*J.L. v. Children's Institute, Inc.*, 177 Cal.App.4th 388 (2009) .......................................... 13

*Lazar v. Superior Ct.*, 12 Cal.4th 631 (1996) ................................................................ 9, 15

*McShan v. Sherrill*, 283 F.2d 462 (9th Cir. 1960) ........................................................... 7

*Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.*, 661 F.2d 776 (9th Cir. 1981) .......... 6

*Newby v. Enron Corp.*, 761 F.Supp.2d 504 (S.D. Tex. 2011) ...................................... 6, 9, 17

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008) ............................ 16

*Paiute-Shoshone Indians of the Bishop Cmty. v. City of L.A.*, 637 F.3d 993 (9th Cir. 2011)... 7, 22, 23

*Palomares v. Bear Stearns Residential Mortg. Corp.*,
2008 U.S. Dist. LEXIS 19407 (S.D. Cal. Mar. 13, 2008) ..................................... 6, 11, 12

*Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105 (2014) ............................... 18

*Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102 (1968) ....................... 23

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ................................. 20, 23, 24

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................... 5

*Stamas v. Cty. of Madera*, 795 F.Supp.2d 1047 (E.D. Cal. 2011) ............................ 13

*Taylor v. BIA*, 325 F.Supp.2d 117 (S.D. Cal. 2011) ...................................... 20, 25

*Tenzer v. Superscope, Inc.*, 39 Cal.3d 18 (1985) ......................................... 10

*United Shoppers Exclusive v. Broadway-Hale Stores, Inc.*,
1965 U.S. Dist. LEXIS 9845 (N.D. Cal. Nov. 24, 1965) ....................................... 12

*Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243 (9th Cir. 1998) ...................... 24

*Williams v. Yamaha Motor Corp., U.S.A.*,
2015 U.S. Dist. LEXIS 68258 (C.D. Cal. April 29, 2015) ................................ 16

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ........................... 16

*Wilson v. Metals USA, Inc.*, 2012 U.S. Dist. LEXIS 168264 (E.D. Cal. Nov. 26, 2012) ............... 7, 21

*Yalter v. Endocare, Inc.*, 2004 U.S. Dist. LEXIS 30360 (C.D. Cal. Nov. 8, 2004) ........................... 12

**STATUTES**

CACI § 1903 ............................................................................................................. 15

CACI § 3710 ............................................................................................................. 13

Civil Code § 2310 ................................................................................................................ 14

Civil Code § 2320 ................................................................................................................ 12

Federal Rule of Civil Procedure 19 ............................................................................ passim

Federal Rule of Civil Procedure 9 ...................................................................................... 5

RESTATEMENT (SECOND) OF AGENCY § 14 ........................................................................ 12

singer/bea LLP

INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 15-CV-02662-EJD

**singer/bea**<sub>LLP</sub>

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 2, 2016 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4, 5th Floor of the United States District Court for the Northern District of California, the Honorable Edward J. Davila presiding, located at 280 South First Street, San Jose, California 95113, Defendant Intuitive Surgical, Inc. will and hereby does move for an Order dismissing with prejudice Plaintiff Rene Heredia's First Amended Complaint, and all causes of action set forth therein.

Intuitive's Motion to Dismiss is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the concurrently-filed Declarations of Ramón I. Moyano and Doug Tilley, the concurrently-filed Request for Judicial Notice, all other matters of which the Court may take judicial notice, and all other arguments, evidence, and submissions as may be presented before or at the hearing on Intuitive's Motion to Dismiss.

\*     \*     \*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In dismissing Dr. Heredia's original complaint, the Court made abundantly clear that he had failed as a matter of law to adequately plead any claim against Intuitive.  The Court determined that Dr. Heredia had failed to plausibly allege any basis on which Intuitive could be held responsible for the alleged actions of foreign third parties, and that Dr. Heredia failed to state a direct claim against Intuitive because his allegations were too vague, too conclusory, and provided insufficient factual detail to satisfy the applicable pleading standards.  The Court did not dismiss the complaint with prejudice, however, electing instead to give Dr. Heredia an opportunity to address the deficiencies identified in its Order.

Apparently, the message was not received.  Although Dr. Heredia has added some allegations and shuffled around some paragraphs and claims, his Amended Complaint remains legally deficient in all the same ways and for all the same reasons as before.  With respect to agency, for example, the Amended Complaint still does not contain a single allegation suggesting that Intuitive had the right to

control DeLeC Científica Argentina S.A. ("DeLeC") in the exercise of its business dealings (the majority of which involve the sale and distribution of products made by other, unrelated medical device manufacturers), or that Intuitive and DeLeC agreed and intended that Intuitive would be bound by DeLeC's conduct—both of which are required elements of an agency relationship.  If anything, the Amended Complaint alleges the opposite—that Intuitive has been unable to exercise any control at all over DeLeC in its dealings with Dr. Heredia.

Similarly, with respect to his misrepresentation claims, Dr. Heredia has done nothing to fix his deficient pleading of the elements of falsity, contemporaneous knowledge, or intent to deceive.  Rather, as before, Dr. Heredia is unable to identify a single representation by either Intuitive or DeLeC that was false when made, much less that any identified speaker knew as much or intended to deceive him.

At bottom, the Amended Complaint confirms what was already clear: by refusing to sue DeLeC—the party who has his money and upon whose conduct his claims inexorably depend—Dr. Heredia has manufactured artificial diversity in order to extort a prominent U.S. corporation in a court 5,400 miles from his home.  Thus, even setting aside his failure to adequately state a claim, Dr. Heredia's Amended Complaint leaves no doubt that this case should be dismissed under Rule 19 for failure to join an indispensable party.  It is high time to end this folly and abuse of the U.S. judicial system.  The Amended Complaint should be dismissed with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    **The Parties**

According to the Amended Complaint, Dr. Heredia is a "distinguished and highly-respected urologist and surgeon" who resides in Bolivia.  (Dkt. No. 32 ("FAC")), ¶¶ 6, 10.)  "[F]or decades[,]" Dr. Heredia has traveled the world to "participat[e] in national and international conferences[,]" including annual meetings of the American Urological Association, at which medical device companies and their distributors present medical equipment.  (*See id*. at ¶¶ 10, 12, 13, 20, 28.)

Intuitive is a Delaware corporation with its headquarters located in Sunnyvale, California.  (FAC, ¶ 7.)  Intuitive owns the rights to the *da Vinci* Surgical System (the "*da Vinci*"), a revolutionary surgeon-controlled surgical robot that facilitates minimally-invasive surgery.  Intuitive

INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 15-CV-02662-EJD

does not sell or distribute the *da Vinci* to customers outside of the United States.  Rather, Intuitive contracts those functions out to its affiliates.  As relevant here, Intuitive's Swiss affiliate, Intuitive Surgical Sárl ("ISS"), entered into a distribution agreement with DeLeC whereby DeLeC served as an independent contractor of ISS with exclusive distribution rights to sell the *da Vinci* system in certain South American countries, including Bolivia.  Intuitive has never entered into any agreement with DeLeC, Trimedical, or any distributor in South America.

### B. Dr. Heredia's Original Complaint[1]

Dr. Heredia's claims relate to his decision in July 2012 to contract with Trimedical, a company located in his native Bolivia, to purchase a *da Vinci*.  (*See* Dkt. No. 1 ("Compl.").)  In short, Dr. Heredia alleged that after initiating a discussion with Intuitive representatives at a trade show, he was referred to DeLeC, an Argentinian company that, pursuant to an agreement with ISS, held exclusive rights to distribute the *da Vinci* in Bolivia and certain other South American countries. Over the ensuing 14 months, Dr. Heredia discussed at length with DeLeC president Carlos Lecour his desire to acquire a *da Vinci*.  Notwithstanding Intuitive's representation that only DeLeC could lawfully distribute the *da Vinci* in Bolivia, Lecour directed Dr. Heredia to Trimedical, whom Lecour held out as DeLeC's own exclusive distributor.  Ultimately, in July 2012, Dr. Heredia and Trimedical alone entered into a contract by which Dr. Heredia was to pay $2,744,000 in advance to Trimedical, after which point Trimedical would deliver the *da Vinci* to him.  As of May 2013—nearly a year after he signed with Trimedical—Dr. Heredia had paid Trimedical less than 75% of the agreed-upon price. At that time, at another trade show, Lecour purportedly advised Dr. Heredia that Trimedical had transferred to DeLeC only a portion of that sum.  Dr. Heredia thereafter refused to continue making the payments required under his agreement with Trimedical.  Trimedical did not deliver the *da Vinci*.

Dr. Heredia then successfully sued Trimedical in his native Bolivia, and expects to recover all of the $1.15 million he claims Trimedical wrongfully failed to transfer to DeLeC.  While he claims to have demanded return of the remaining $850,000 from DeLeC—who offered to do so, less a transactional fee for the "cost of doing business[,]" an offer Dr. Heredia apparently rejected—Dr.

---

[1]    To avoid undue repetition, the instant Motion incorporates by reference the summaries of allegations set forth in Intuitive's motion to dismiss, Intuitive's reply in support of the same, and the Court's order granting the same.  (*See* Dkt. Nos. 12, 24, 29.)

Heredia does not purport to have pursued legal relief from DeLeC at any time or in any jurisdiction. Instead, on June 12, 2015, Dr. Heredia initiated this lawsuit against only Intuitive.

On November 30, 2015, this Court granted Intuitive's motion to dismiss all of Dr. Heredia's claims.  (*See* Dkt. No. 29 ("Order").)  The Court determined that Dr. Heredia did not plausibly assert any wrongdoing by Intuitive, could not identify any actionable misrepresentation by Intuitive, and failed to plead any basis to hold Intuitive responsible for the alleged misconduct of DeLeC or Trimedical.  Among other things, the Court rejected Dr. Heredia's assertions that "Intuitive 'cloaked' DeLeC with 'actual and ostensible authority to act on its behalf'" by directing South American visitors to its website to contact DeLeC, by utilizing DeLeC employees at medical conferences, and by identifying DeLeC as its "agent and exclusive distributor" for Bolivia.  (*Id.* at 5-6.)  The Court granted Dr. Heredia leave to amend.

**C.  Dr. Heredia's Amendments**

On December 18, 2015, Dr. Heredia filed his First Amended Complaint.  (Dkt. No. 32 ("FAC").)  In relevant part, Dr. Heredia's FAC makes the following amendments[2]:

- It provides additional detail regarding the identity of Intuitive representatives who made allegedly false or incomplete misrepresentations regarding DeLeC's reliability;

- It asserts that Intuitive personnel remained in contact with Dr. Heredia during his discussions with DeLeC;

- It claims that, contrary to Intuitive's representations to this Court, Intuitive has a longstanding distributorship agreement with DeLeC;

- It adds several additional allegations regarding DeLeC's representations and conduct in marketing the *da Vinci* and in dealing with Dr. Heredia; and

- It asserts that Intuitive representatives promised to help him recover a refund from DeLeC, but were ultimately unsuccessful.

As set forth below, however, Dr. Heredia's amendments neither cure nor, in many instances, address the fatal deficiencies identified in the Court's Order and in Intuitive's original motion papers.

---

[2]     Attached as Exhibit 7 to the Declaration of Doug Tilley in support of the instant Motion ("Tilley Decl.") is a redline, prepared by counsel for Dr. Heredia, showing the changes from the original to the amended complaint.

singer/bea LLP

## II. LEGAL STANDARDS[3]

### A. Dr. Heredia Must Plead Facts Showing "Facially Plausible" Claims that State "Cognizable" Legal Theories

Federal Rule of Civil Procedure 12(b)(6) requires dismissal where the pleaded allegations suffer from either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Gerritsen v. Warner Bros. Entm't Inc.*, 2015 U.S. Dist. LEXIS 84978, *49 (S.D. Cal. Jan. 30, 2015). To avoid dismissal, a complaint must contain factual matter sufficient, if accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Merely setting forth "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A claim has facial plausibility only when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief[,]" and must be dismissed. *Id.* at 557; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (dismissal required "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[.]").

While the Court generally must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of a plaintiff, the Court may not draw unreasonable inferences, credit conclusory legal allegations cast in the form of factual allegations, or credit allegations inconsistent with matters subject to judicial notice. *See Twombly*, 550 U.S. at 553-56; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In assessing the plausibility of a claim, the Court "draw[s] on judicial experience and common sense, and consider[s] obvious alternative explanation[s]." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1056 (9th Cir. 2011).

### B. Heightened Pleading Standard for Fraud-Based Claims

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this particularity requirement, a

---

[3] For the sake of brevity, Intuitive incorporates by reference its and the Court's previous discussions of the applicable legal standards. (*See* Dkt. Nos. 12, 24, 29.)

1   complaint must "state the time, place and specific content of the [allegedly] false representations as

2   well as the identities of the parties to the misrepresentation." *Misc. Serv. Workers, Drivers &*

3   *Helpers v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981). The plaintiff must also plead a

4   plausible factual basis for each element of his fraud claims. *See, e.g.*, *Cafasso*, 637 F.3d at 1055.

5         Where a plaintiff seeks to hold a corporate principal liable for the alleged misrepresentations

6   of its purported agents, he must specifically and plausibly allege that the purported agents' statements

7   constitute fraud because, *inter alia*, those agents (a) knew the disputed statements were false when

8   made, and (b) intended that plaintiff rely on them. *See Newby v. Enron Corp.*, 761 F.Supp.2d 504,

9   576 (S.D. Tex. 2011). Moreover, "[w]hen a plaintiff alleges that a defendant is liable for intentional

10  misrepresentation under [] an agency [] theory, Rule 9(b) requires that the plaintiff allege with

11  particularity facts that support the existence of an agency relationship[.]" *Palomares v. Bear Stearns*

12  *Residential Mortg. Corp.*, 2008 U.S. Dist. LEXIS 19407, *12 (S.D. Cal. Mar. 13, 2008).

13        **C.  Necessary and Indispensable Parties Under Rule 19**

14        Where complete relief cannot be accorded among existing parties to a lawsuit, or an absent

15  third party has such an interest in the subject of the litigation that proceeding in their absence would

16  cause prejudice, the third party must be joined if feasible. Fed. R. Civ. P. 19(a). If joinder is not

17  feasible, the action may be dismissed in its entirety. Fed. R. Civ. P. 19(b). Rule 19 is intended to

18  protect all parties' interests and promote judicial economy by "affording complete adjudication of the

19  dispute" rather than "repeated lawsuits concerning the same subject matter." *In re Toyota Motor*

20  *Corp.*, 785 F.Supp.2d 883, 904 (C.D. Cal. 2011).

21        In determining whether an absentee is a "necessary" party for purposes of Rule 19, the Court

22  considers whether the absentee was an "active participant[] in the alleged wrongful conduct, or

23  whether the conduct complained of was solely that of the" named defendant. *Id.* at 905; *see also*

24  *Freeman v. NW. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (absentee must be joined if an

25  "active participant" in causing plaintiff's harm). Courts also deem an absentee necessary where "its

26  evidence will either support the complaint or bolster the defense[.]" *Toyota*, 785 F.Supp.2d at 904.

27        Where a necessary absentee cannot feasibly be joined, *e.g.*, because the Court lacks personal

28  jurisdiction over it or joinder would deprive the Court of subject matter jurisdiction, the Court must

determine whether that absentee is "indispensable," that is, whether, "in equity and good conscience[,]" the action should be dismissed so that the parties may participate elsewhere in a litigation capable of entirely resolving their dispute. Fed. R. Civ. P. 19(b) (listing factors to be considered); *Wilson v. Metals USA, Inc.*, 2012 U.S. Dist. LEXIS 168264, *16 (E.D. Cal. Nov. 26, 2012) ("Joinder of a nonparty under Rule 19 is not feasible where it would destroy complete diversity of citizenship[.]"). The Court considers:

> (1) the plaintiff's interest in having a forum; (2) the defendant's interest in not proceeding without the required party; (3) the interest of the non-party by examining the extent to which the judgment may as a practical matter impair or impede [its] ability to protect [its] interest in the matter; and (4) the interests of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Paiute-Shoshone Indians of the Bishop Cmty. v. City of L.A.*, 637 F.3d 993, 1000 (9th Cir. 2011). While "no factor taken alone is dispositive[,]" *Wilson*, 2012 U.S. Dist. LEXIS 168264, *13, "the availability of an alternate forum and… risk of prejudice to the absent party… are the two most important considerations in the Rule 19 analysis." *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 666 (W.D. Wash. Oct. 7, 2004). "[C]ommon sense and realistic appraisals should play the primary role in making Rule 19 determinations." *Id*. at 665.

"In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence." *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 (7th Cir. 2001). "[E]vidence concerning absent indispensable parties may [] be presented by the affidavit of any person having knowledge bearing upon their existence." *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960) (considering affidavits over claimant's objection because the Court "has a duty to protect absent persons who will be affected by [its] decree[.]").

## III.   ARGUMENT

### A.   Each of Dr. Heredia's Claims Fails as a Matter of Law

#### 1.   Intuitive May Not Be Held Liable for DeLeC's Alleged Conversion

Dr. Heredia's conversion claim must be dismissed because he still fails to plausibly allege that "Intuitive directly assumed control or ownership over Plaintiff's payments or that it applied those payments for its own use." (Order at 6.) In fact, he continues to plead the opposite: he

acknowledges that Intuitive never received any of the funds he claims to have paid to Trimedical, and

that DeLeC "remains in possession" of the $850,000 over which he brings suit.  (FAC, ¶ 74.)  That

DeLeC alone retains possession of the funds in issue directly refutes any possible suggestion—which

Dr. Heredia fails even to intone, let alone support—that Intuitive has assumed ownership over his

payments or applied them for its own use.

The FAC similarly refutes any plausible assertion that Intuitive had control over DeLeC or

Dr. Heredia's payments.  (*See* Order at 6.)  Even crediting the suggestion that Intuitive schemed to

use DeLeC as a vehicle to obtain Dr. Heredia's money, Dr. Heredia alleges that DeLeC refused to

comply and instead retained the funds for itself.  (*See* FAC, ¶¶ 21, 22, 74.)  Moreover, the email sent

by Chris Tom, in-house counsel to certain Intuitive entities, to Lecour—which Dr. Heredia

selectively quotes but strategically withholds (*see id.* at ¶ 42)—establishes that Intuitive has no

control over DeLeC.  In relevant part, Mr. Tom's April 13, 2015 message reads as follows:

> I therefore also write to once again ask DeLec to return the deposit or any unused
> portion to its rightful owner.  Intuitive Surgical has no direct involvement with or
> knowledge of any of the alleged events that have transpired among Dr. Heredia,
> DeLec Cientifica, and Trimedical (DeLec's Bolivian sub-distributor) that are the
> subject of the dispute at hand, so Intuitive Surgical should have no involvement in
> their resolution.  However, we do not understand why DeLec has not returned the
> deposit or any unused portion even though DeLec admitted to receiving the
> deposit and that at least a portion of the deposit is unused.  Commercial
> reasonableness, good faith, and fair dealing suggest that DeLec should
> immediately return the deposit to Trimedical (the party who gave DeLec the
> deposit) or to Dr. Heredia (to the extent Trimedical authorizes DeLec to do so).
> Intuitive Surgical reserves the right to seek all available legal remedies against
> DeLec Cientifica for costs already incurred in responding to Dr. Heredia's
> California counsel and for costs we will incur if Dr. Heredia initiates formal legal
> action against Intuitive Surgical.

(Tilley Decl., Ex. 3.)  Misleading quotations notwithstanding, Dr. Heredia's allegations demonstrate

beyond dispute that (i) Intuitive never assumed possession of his money or applied it to its own use,

and (ii) DeLeC has rebuffed any attempt by Intuitive to exert any influence or control over the

transaction or funds at issue here.  The FAC therefore does the very opposite of pleading plausible

factual support for a conversion claim, and must be dismissed.

Dr. Heredia's aiding and abetting theory also must be rejected.  Despite this Court's

explanation of the required elements of an aiding and abetting claim (*see* Order at 6-7 fn.2), Dr.

Heredia has again failed to intone any of them, much less plead facts that could plausibly establish

singer/bea LLP

Intuitive's liability.  Rather, all Dr. Heredia has alleged is that Intuitive referred an interested Bolivian customer to the entity holding exclusive distribution rights for Bolivia, "worked with" him to complete his order, and checked in to see whether payments were being made.  (FAC, ¶ 64.) These vague and unremarkable allegations contain no factual support for the proposition that Intuitive "knew" of DeLeC's alleged intentions, let alone that DeLeC's actions would "constitute[] a breach of a duty" to Heredia[4]; that Intuitive "g[ave] substantial assistance or encouragement to [DeLeC] to so act[,]" or that Intuitive's passive monitoring, "separately considered, constitutes a breach of duty to [him.]"  (Order at 6-7 fn.2.)

### 2. Intuitive Is Not Liable for DeLeC's Alleged Fraud

#### a. Dr. Heredia Has Not Sufficiently Pleaded Any Fraud by DeLeC[5]

The elements of an intentional misrepresentation claim are: (1) a misrepresentation, made with (a) knowledge of its falsity and (b) an intent to defraud or induce reliance; (2) justifiable reliance; and (3) resulting damage.  *See Lazar v. Superior Ct.*, 12 Cal.4th 631, 638 (1996).  Dr. Heredia's efforts to hold Intuitive liable for DeLeC's alleged conduct fails at the very first step:  he has not pleaded any actionable fraud by DeLeC.

As before, Dr. Heredia "has not adequately pled the first and most basic element" of his fraud claim:  an actionable representation that was false "when made."  (Order at 10.)  He identifies two purported misstatements by DeLeC:  that DeLeC (1) "would transfer to Intuitive the funds it received from Trimedical" (FAC, ¶ 69); and (2) "would provide Dr. Heredia with the *da Vinci* system if he fulfilled his obligations under the written contract with Trimedical" (*id.* at ¶ 73).  The FAC is entirely bereft, however, of any facts evidencing the falsity of either statement "when made."[6]  (Order at 10.) Rather, Dr. Heredia again relies entirely on *subsequent events* to support his conclusion that DeLeC

---

[4]    Notably, Dr. Heredia has not stated any basis for any "duty" owed to him by DeLeC.

[5]    Intuitive makes these arguments based solely on the obvious deficiencies appearing on the face of the FAC.  DeLeC may have different and/or additional defenses to Dr. Heredia's accusations, and cannot in equity or good conscience be denied an opportunity to present them before this Court makes any determination that could prejudice its rights.  (*See* Sections III-B-1-b and III-B-3-a, *infra*.)

[6]    The FAC is similarly devoid of any well-pleaded facts suggesting that DeLeC knew of such falsity, or intended to deceive.  *See Cafasso*, 637 F.3d at 1055 (plaintiff must plead plausible factual basis for each element of fraud claims); *Newby*, 761 F.Supp.2d at 576 (dismissing fraud claim where plaintiffs failed to "adequately plead facts showing [any employee's] fraudulent intent[.]").

singer/bea LLP

"never intended to honor Dr. Heredia's agreement to purchase the *da Vinci* system"—an agreement to which DeLeC was not even a party (*see* Tilley Decl., Ex. 3 (the "Trimedical Agreement")[7])—and instead "intended to misappropriate any and all funds it received by way of Dr. Heredia." (FAC, ¶ 76.) But as the Court explained in rejecting his prior attempts to allege falsity-by-hindsight, Dr. Heredia "is precluded from simply pointing to a [non-party's] statement, noting that the content of the statement conflicts with the current state of affairs, and then concluding that the statement in question was false when made." (Order at 10; *see also Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30-31 (1985) (that non-performance may be sufficient to prove fraud "is not, and has never been, a correct statement of the law, and we disapprove the cases cited to the extent they suggest otherwise.").) Dr. Heredia's vicarious fraud claim must therefore be dismissed at the outset.

Monday morning quarterbacking aside, Dr. Heredia's claims of falsity lack plausibility because there are several "obvious alternative explanation[s]" that would render lawful DeLeC's alleged refusals to transfer funds to Intuitive or to deliver the *da Vinci* to Dr. Heredia.[8] *See Cafasso*, 637 F.3d at 1056. <u>First</u>, as a non-party to the Trimedical Agreement, DeLeC had no delivery or transfer obligations whatsoever. Dr. Heredia posits no reason why Court may or should disregard this: even as he claims that "medical device import regulations required Trimedical *and DeLeC's* involvement" (FAC, ¶ 21 (emphasis added)), Dr. Heredia does not attempt to explain why Trimedical was the only counterparty to the purchase agreement. Dr. Heredia similarly fails to explain why the Court may or should ignore the fact that the Agreement imposes no obligation on any non-party to do anything vis-à-vis any other non-party. <u>Second</u>, even if Dr. Heredia could somehow add additional parties and terms to the Trimedical Agreement, by his own admission, DeLeC *still* had no obligation to transfer funds or deliver the *da Vinci* because Dr. Heredia failed in two respects to uphold his end of the bargain: (i) he failed to pay the full purchase price "in advance" of delivery; and (ii) the partial payments he did make did not occur "upon execution" or even within "60 working days" thereafter,

---

[7]    In granting Intuitive's motion to dismiss, the Court also granted Intuitive's request that the Court take judicial notice of the Trimedical Agreement. (*See* Order at 8 fn.3.) The Court may thus consider the Trimedical Agreement for purposes of this motion. *See, e.g., Gerritsen*, 2015 U.S. Dist. LEXIS 84978 at *48 (court may take judicial notice of its own files and records).

[8]    Again, DeLeC may have additional defenses to Dr. Heredia's claims, and must be allowed to present them.

singer/bea<sub>LLP</sub>

but were instead strung out over the course of a year.  (Trimedical Agreement at ¶¶ 4, 5; *see also* FAC, ¶ 25; Order at 8-9 (dismissing breach of contract claim for failure to satisfy all conditions for delivery).)  <u>Finally</u>, Dr. Heredia's claims that DeLeC is refusing to return his $850,000 are contradicted by his own allegation that DeLeC has agreed to return the overwhelming majority of these funds, less an 8-11% transactional cost.  (FAC, ¶ 75.)  Dr. Heredia may believe that this is wrong, but his agreement with Trimedical does not speak to this issue, which much therefore be evaluated under applicable law (likely that of Argentina or Bolivia).  Certainly, the laws of those jurisdictions and commercial reasonableness as understood by courts of those countries could support DeLeC's decision to impose a transactional cost following Dr. Heredia's decision to stop making payments under the Agreement.  To be sure, Dr. Heredia has not alleged otherwise.  Given these potential explanations for DeLeC's alleged conduct, together with any others which may be known only to DeLeC, the scant facts alleged are at most "merely consistent with" DeLeC's liability. *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 679; *Cafasso*, 637 F.3d at 1055.  All claims arising from such conduct must therefore be dismissed.

### b.  Dr. Heredia Has Not Pleaded a Valid Theory of Vicarious Liability

Even had Dr. Heredia sufficiently alleged fraud by DeLeC—and he has not—he may not hold Intuitive responsible for DeLeC's purported misconduct.

#### i.  <u>Dr. Heredia Has Failed to Plausibly Allege That DeLeC was Intuitive's Agent</u>

Dr. Heredia's amended pleading does not cure the deficiencies identified in the Court's Order. (Order at 4-6.)  <u>First</u>, the FAC still fails even to recite the required elements of agency (much less plead plausible supporting facts):  that "the agent or apparent agent holds power to alter the legal relations between the principal and third persons, and between the principal and the agent; that the agent is a fiduciary with respect to matters within the scope of the agency; and that the principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Palomares*, 2008 U.S. Dist. LEXIS 19407 at *13-14 (dismissing actual and apparent agency allegations).[9]  In fact, the FAC affirmatively refutes this theory.  For example, Dr. Heredia's allegations that DeLeC

---

[9]     "Ostensible agency" and "apparent agency" may be used "interchangeably" because "there is no distinction among them." *Armato v. Baden*, 71 Cal.App.4th 885, 897, fn.4 (1999).

1   has defied Intuitive's requests that DeLeC issue a full refund affirmatively confirm that Intuitive

2   exercises no control over DeLeC, which is the "key characteristic" of an agency relationship.

3   *Imagineline, Inc. v. CafePress.com. Inc.*, 2011 U.S. Dist. LEXIS 39828, *12. (C.D. Cal. Apr. 6, 2011);

4   *see also* Civ. C. § 2320 (authorizing agent to "disobey instructions" only where "clearly for the

5   interest of his principal" and "there is not time to communicate with the principal."). Dr. Heredia's

6   own allegations therefore doom his actual and ostensible agency theories. *See Palomares*, 2008 U.S.

7   Dist. LEXIS 19407 at *13-14; *AE v. County of Tulare*, 2010 U.S. Dist. LEXIS 34109 (E.D. Cal. Apr.

8   7, 2010) ("Neither actual nor ostensible agency arises" where, *inter alia*, "[n]o facts are present that

9   [principal] controlled or had the ability to control" agent).

10   <u>Second</u>, Dr. Heredia's contention that DeLeC's status as "exclusive distributor" makes it

11   Intuitive's agent fails as a matter of law. *See, e.g.*, *In re Torres*, 2005 U.S. Dist. LEXIS 34672,

12   *64-67 (C.D. Cal. July 11, 2005) (rejecting actual and ostensible agency where distribution

13   agreement existed between purported principal and agent, principal's representatives held agent out

14   as "sole source" and "exclusive distributor" of principal's products, and principal provided training

15   materials to agent). According to the FAC, Dr. Heredia's payments to Trimedical under the sales

16   agreement were to be used to purchase the *da Vinci* system from Intuitive, for delivery to him by

17   Trimedical. "Such a transaction is a sale rather than an agency." *United Shoppers Exclusive v.*

18   *Broadway-Hale Stores, Inc.*, 1965 U.S. Dist. LEXIS 9845, *17-18 (N.D. Cal. Nov. 24, 1965). There

19   is no plausible factual allegation that Trimedical or DeLeC was acting as a straw man for Intuitive,

20   that either was acting primarily for Intuitive's benefit, or that Intuitive could exercise control over

21   either. *See Yalter v. Endocare, Inc.*, 2004 U.S. Dist. LEXIS 30360, *18 (C.D. Cal. Nov. 8, 2004)

22   (exclusive distributor is not an agent unless "[agent] had the right to alter [principal's] legal

23   relationship with third parties or that [agent] was acting primarily for [principal's] benefit, rather than

24   its own."); RESTATEMENT (SECOND) OF AGENCY § 14J ("One who receives goods from another for

25   resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for

26   this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act

27   primarily for the benefit of the one delivering the goods to him or is to act primarily for his own

28   benefit."). In fact, Dr. Heredia again alleges the very opposite of what he is required to show: not a

1  penny of Dr. Heredia's money reached Intuitive because Trimedical and DeLeC kept it all for

2  themselves.

3          If anything, Dr. Heredia's heavy reliance on DeLeC as Intuitive's "exclusive distributor for

4  Bolivia" defeats his agency theory.  (*See, e.g.,* FAC, ¶ 3.)  According to the FAC, notwithstanding

5  that Intuitive held DeLeC out as its *only* authorized distributor in Bolivia, DeLeC referred Dr.

6  Heredia to Trimedical to buy the *da Vinci*.  (*Id*.)  In doing so, DeLeC would have exceeded the scope

7  of any authority it could possibly be found to have had under the allegations contained in the FAC.

8  *See, e.g.*, *Stamas v. Cty. of Madera*, 795 F.Supp.2d 1047, 1083 (E.D. Cal. 2011) ("No liability is

9  incurred by the principal for acts of the agent beyond the scope of the agent's actual or ostensible

10  authority, and a third party who deals with an agent and knows of the agency is under a duty to

11  ascertain its scope."); *Dimas, LLC v. Inv. Grade Loans*, 2007 Bankr. LEXIS 2516, *50 (U.S. Bankr.

12  N.D. Cal. July 23, 2007) ("A principal cannot be held accountable for the conduct of an agent who

13  acts beyond the scope of his actual or ostensible authority.").  Moreover, because he admits that he

14  *knew* Intuitive authorized only DeLeC to distribute the *da Vinci* in Bolivia (FAC, ¶ 14), Dr. Heredia

15  cannot plausibly assert that, in contracting with Trimedical at DeLeC's urging, he reasonably relied

16  on any appearance of authority attributable to Intuitive.  *See Stamas*, 795 F.Supp.2d at 1083; *J.L. v.*

17  *Children's Institute, Inc.*, 177 Cal.App.4th 388, 404 (2009) ("Ostensible agency cannot be established

18  by the representations or conduct of the purported agent; the statements or acts of the principal must

19  be such as to cause the belief the agency exists.").[10]

20          <u>Third</u>, Dr. Heredia does not assert any ratification by Intuitive of DeLeC's unauthorized acts,

21  much less its purported fraud or theft, and his allegations are insufficient as a matter of law to sustain

22  any such claim.  While he concludes (without pleading any supporting facts) that Intuitive was "fully

23  informed" of his agreement with Trimedical (FAC, ¶ 24), Dr. Heredia points to no alleged action

24  evidencing Intuitive's "approval[.]"  CACI § 3710 (ratification requires both knowledge and

---

[10]      Owens's purported May 2012 statement that "Intuitive, DeLeC, and Trimedical would all

26  work in concert in connection with [Heredia's] purchase" (FAC, ¶ 21) cannot elevate Dr. Heredia's

27  agency claims from merely "possible" to "plausible."  *Twombly*, 550 U.S. at 557.  Even in the light

most favorable to Dr. Heredia, this alleged statement reflects only the unremarkable notion that if a

28  distributor seeks to sell a *da Vinci* to a client, Intuitive would not refuse to sell to that distributor.

**singer/bea**LLP

approval).  Dr. Heredia does not, for example, allege that Intuitive accepted any benefit of DeLeC's actions; he instead asserts that DeLeC kept every cent not misappropriated by Trimedical.  *See* Civ. C. § 2310 ("A ratification can be made… by accepting or retaining the benefit of the act, with notice thereof.").  Dr. Heredia similarly does not contend that Intuitive sat idly by after learning of DeLeC's purported theft; instead, he alleges that Intuitive has removed DeLeC as its distributor for Bolivia, and may terminate DeLeC's distributorship entirely.  (*See* FAC, ¶¶ 38, 43; *Garcia v. Clovis Unified Sch. Dist.*, 2009 U.S. Dist. LEXIS 83352, *54-55 (E.D. Cal. Sept. 11, 2009) ("Garcia relies heavily on cases that hold a failure to discharge an [agent] after learning of wrong doing may be evidence of ratification.  However, in each of these cases, the [principal] had knowledge of its [agent's] conduct and there was no indication that the [principal] took any kind of corrective or disciplinary action.").)

### ii.   Dr. Heredia's Other Vicarious Liability Theories Fail

Even after amendment, Dr. Heredia still may not recover from Intuitive under his *respondeat superior* or aiding and abetting theories.  As to the former, his amendments add nothing to explain or support his naked conclusion, already rejected by this Court (Order at 6-7 fn.2), that "[DeLeC president] Lecour was also an officer or employee of Intuitive."  (FAC, ¶ 15.)  He does not point to anything Intuitive allegedly did to contribute to his mistaken belief.  (*See id.* at ¶¶ 28, 44-48 (pointing to Lecour and DeLeC's own representations at trade shows).)  Nor does he allege any plausible facts which could satisfy his "burden of proof to demonstrate that [Lecour's] tortious act was committed within the scope of his employment" when he disavowed DeLeC's status as exclusive distributor for Bolivia or allegedly stole Dr. Heredia's money.  (Order at 7 fn.2 (collecting cases).)

Dr. Heredia's aiding and abetting theory fails for the same reasons set forth in Section III.A.1 above: he has failed even to intone, let alone offer plausible factual support to satisfy, the elements of aiding and abetting liability.

### 3.   Dr. Heredia Has Not Pleaded with Particularity Any Fraud by Intuitive

Just as he does not allege any actionable fraud by DeLeC, Dr. Heredia also fails to plead a plausible fraud claim against Intuitive.  His claims must be dismissed.

**singer/bea**LLP

#### a.  No Actionable Fraudulent or Negligent Misrepresentation by Intuitive

As set forth above, asserting an intentional misrepresentation claim requires Dr. Heredia to plausibly and specifically allege: (1) a misrepresentation, made with (a) knowledge of its falsity and (b) an intent to defraud or induce reliance; (2) justifiable reliance; and (3) resulting damage.  *See Lazar*, 12 Cal.4th at 638.  Negligent misrepresentation requires the same showing, except (a) rather than know his or her representation is false, the speaker must only lack any "reasonable grounds for believing the representation was true when [he/she] made it" (CACI § 1903(3)) and (b) plaintiff must establish that the speaker owes him a legal duty.  *Eddy v. Sharp*, 199 Cal.App.3d 858, 864 (1988).

In support of these claims, Dr. Heredia relies upon a sole purported misrepresentation:  that between May 2011 and July 2012, Owens, Delgado, and Alvarez-Quintero represented that "DeLeC was—like all of [Intuitive's] agents and exclusive distributors—competent, trustworthy, and able to complete the transaction."  (FAC, ¶ 20, 23, 92, 104.)[11]  For several reasons, this cannot serve as the basis for a fraud claim.

<u>First</u>, Dr. Heredia still fails to "sufficiently allege that [any] statement concerning DeLeC's reliability was either false or incomplete when made."  (Order at 10.)  The single purported factual allegation supporting Dr. Heredia's claim of falsity appears to be that in or after mid-2013—one year *after* he entered into the Trimedical Agreement—Alvarez-Quintero purportedly stated that "Intuitive" had at some unspecified time received "complaints" from unnamed persons regarding "similar" conduct by DeLeC.  (*Id*. at ¶¶ 94, 105.)  Crucially, Dr. Heredia does not allege that (i) Alvarez-Quintero himself was aware of any such complaints when, in mid-2012, he expressed his personal opinion regarding DeLeC's reliability, or (ii) even if he were aware of these nebulous complaints, that they would have caused him to doubt DeLeC's competence, trustworthiness, or ability to complete a transaction.  (*See id*. at ¶¶ 95, 106 (Alvarez-Quintero was unable to state "the precise

---

[11]     While he identifies a second class of purported misrepresentation—that at some unidentified time after May 2013, Owens, Alvarez-Quintero, and La Mendola "promised" that Intuitive would help him pursue a refund from DeLeC (FAC, ¶¶ 36-38)—Dr. Heredia's claims do not appear to rely on them.  Nor could they:  inasmuch as he claims that fraud induced him to enter into the July 2012 Sales Agreement with Trimedical, these alleged subsequent statements are of no possible relevance.  Moreover, these statements were indisputably true; as set forth in the judicially-noticeable email Dr. Heredia relies upon but tactically withholds from the Court, Intuitive did seek to secure a refund for him.  (*See* Tilley Decl., Ex. 3.)  DeLeC refused, underscoring Intuitive's lack of control over it.

nature of the complaints Intuitive had received previously.").)  Moreover, Dr. Heredia does not allege *at all* that Owens or Delgado were ever aware of the existence or nature of a single complaint regarding DeLeC, let alone any that would refute or render unreasonable their opinions, *based on their own prior experiences*, that DeLeC was competent and trustworthy.

Dr. Heredia's threadbare assertion of falsity thus fails for each of the three reasons previously identified by the Court:  (1) "it attempts to show past falsehood by pointing to circumstances" that subsequently arose; (2) "it is not particular enough to satisfy Rule 9(b)[,]" in that the FAC expressly disavows any awareness of the subject matter of those complaints, who at Intuitive allegedly learned of them, or when, and (3) "[i]t also fails to explain why [the Intuitive representatives] should be charged with knowledge of customer complaints made to their employer."[12]  (Order at 10.)  Dr. Heredia's claim is also deficient in light of an obvious and equally plausible (if not more so) alternative:  that the existence of customer complaints was not disclosed in 2012 because neither Owens, Delgado, nor Alvarez-Quintero was aware of them.  *See Cafasso*, 637 F.3d at 1055; *Twombly*, 550 U.S. at 557.  Each of these shortcomings requires dismissal.

---

[12]     The case law leaves no doubt that the mere opportunity to discover customer complaints, even assuming that any such opportunity existed here, fails as a matter of law to support knowledge or even falsity.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (affirming dismissal and noting that "courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of" a purported issue because "complaints posted on a manufacturer's webpage merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that [the manufacturer] had knowledge [of the issue].");  *see also Williams v. Yamaha Motor Corp., U.S.A*., 2015 U.S. Dist. LEXIS 68258, *27-28 (C.D. Cal. April 29, 2015) (dismissing fraud claim where plaintiff alleged that "Defendant received so many complaints [prior to sale] that it decided to devote a fully staffed customer relations service department to address them, [because] nowhere in the SAC do Plaintiffs identify even a single customer who complained during this timeframe.");  *Fisher v. Honda N. Am.*, 2014 U.S. Dist. LEXIS 84570, *12-17 (C.D. Cal. June 12, 2014) (rejecting reliance on consumer complaints even where defendant allegedly sought out and responded to them);  *Baba v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 8527, *9-10 (N.D. Cal. Jan. 28, 2011) (dismissing fraud allegations because "[a]wareness of a few customer complaints, however, does not establish knowledge of an alleged defect.");  *Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 46052, *27-28 (N.D. Cal. Apr. 9, 2010) (dismissing fraud-based claim because "complaints posted on Apple's consumer website merely establish the fact that some consumers were complaining.");  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants.").

singer/bea LLP

**singer/bea** LLP

1       <u>Second</u>, Dr. Heredia does not allege *at all* that Intuitive intended to defraud him.  He instead

2   proffers the naked conclusion, without any factual support whatsoever, that Intuitive "knew" he

3   "would not have agreed to purchase the *da Vinci* system" if these unspecified customer complaints

4   had been shared with him.  (FAC, ¶¶ 87, 98.)  Even if an allegation about what Intuitive *knew* could

5   be construed to relate to the separate legal element of what Intuitive *intended*—and it cannot—

6   dismissal is nevertheless required because Dr. Heredia has not adequately pleaded any facts showing

7   fraudulent intent by any particular speaker.  *See Newby*, 761 F.Supp.2d at 576 (dismissing fraud

8   claim over employees' claimed misrepresentations because plaintiffs failed to "adequately plead facts

9   showing [any employee's] fraudulent intent[.]").

10       <u>Finally</u>, Dr. Heredia's negligent misrepresentation claim must be dismissed for failure to

11   adequately allege any duty owed to him by Intuitive.  Based on his failure to plead, even upon

12   information and belief, that Owens, Delgado, or Alvarez-Quintero actually knew of any relevant

13   complaints regarding DeLeC's reliability at the time of the alleged statements, Dr. Heredia appears to

14   believe that Intuitive representatives may be held to a standard of omniscience.  He is incorrect:

15           One party to a business transaction is under a duty to **exercise reasonable care** to
            disclose to the other before a transaction is consummated, … the facts basic to the

16           transaction, **if he <u>knows</u> that the other is about to enter into it under a mistake
            as to them**, and that the other, because of the relationship between them, the

17           customs of the trade or other objective circumstances, would reasonably expect a
            disclosure of those fact.

18   *Eddy*, 199 Cal.App.3d at 864-65 (emphases added); *see also* Dkt. No. 23 at 16 (quoting and relying

19   upon this language in opposition to motion to dismiss).  Given that Alvarez-Quintero, Owens, and

20   Delgado were not even allegedly aware of any complaints regarding DeLeC, and instead spoke based

21   on their own prior experiences, there is no plausible suggestion that any of them "kn[ew] that [Dr.

22   Heredia was] about to enter into [the Trimedical agreement] under a mistake" regarding DeLeC.

23       Dr. Heredia's misrepresentation claims must therefore be dismissed in light of his failure to

24   sufficiently plead any misrepresentation that was false when made, any intent by Intuitive to defraud

25   him, or any basis for any duty owed to him.

26

27

28

**singer/bea**LLP

1

### b. No Actionable Fraudulent Concealment by Intuitive

2   A fraudulent concealment claim requires a plaintiff to show that "(1) [defendant] concealed or

3   suppressed a material fact, (2) [defendant was] under a duty to disclose the fact to the plaintiff,

4   (3) [defendant] intentionally concealed or suppressed the fact with the intent to defraud the plaintiff,

5   (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the

6   concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the

7   plaintiff must have sustained damage." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223

8   Cal.App.4th 1105, 1130 (2014).

9   Dr. Heredia's fraudulent concealment claim fails along with his other fraud-based causes of

10   action. First, as set forth above, Dr. Heredia has failed to sufficiently identify any material fact that

11   was knowingly concealed or suppressed by any Intuitive representative. Second, Dr. Heredia has

12   failed to adequately state any grounds upon which Intuitive owed him any duty, let alone that any

13   Intuitive representative breached such duty. Third, the FAC is entirely devoid of any fact plausibly

14   showing any fraudulent intent by any Intuitive speaker. Each of these failures is independently fatal.

15   **B. The FAC Must Be Dismissed Because DeLeC is an Indispensable Party That Cannot Be Joined**

16

17   **1. DeLeC is a Necessary Party**

18   "Whether [DeLeC is] necessary depends on whether [it] w[as an] active participant[] in the

19   alleged wrongful conduct, or whether the conduct complained of was solely that of [Intuitive]."

20   *Toyota*, 785 F.Supp.2d at 905 (dismissing claims against domestic entity over conduct of foreign

21   affiliates). Here, Dr. Heredia's allegations leave no doubt that DeLeC was not merely an "active

22   participant" in the alleged theft of his money, ***DeLeC is the central culprit***. According to Dr.

23   Heredia, DeLeC—not Intuitive—"stole" his money and improperly refuses to return it. (*See* FAC,

24   ¶ 74; Compl., ¶¶ 23, 82; *see Hi-Tech Gaming.com Ltd. v. IGT*, 2008 U.S. Dist. LEXIS 93740, *16

25   (D. Nev. Nov. 18, 2008) (dismissing complaint where absent entity "played an active and key role in

26   this dispute, and … is the holder of disputed assets and liabilities."); *accord Acacia Corp. Mgmt.,*

27   *LLC v. United States*, 2013 U.S. Dist. LEXIS 82959, *14 (E.D. Cal. June 11, 2013) (in case involving

28   alleged transfers among named and unnamed parties, absentee "is necessary when it retains some

INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 15-CV-02662-EJD

1    kind of tangible monetary or property interest.").)  DeLeC—not Intuitive—purportedly carried out

2    that theft by falsely promising to "transfer to Intuitive the funds it received from Trimedical[,]" then

3    "reneg[ing]" on that promise, all the while "intend[ing] to misappropriate any and all funds it

4    received by way of Dr. Heredia."  (*Id*. at ¶¶ 69, 73, 76.)  Dr. Heredia says nothing of Intuitive's

5    participation in these alleged bad acts.  To the contrary, he confirms that Intuitive never received a

6    cent of his money, which was sent to and allegedly remains with DeLeC in Argentina.  *See Chiu v.*

7    *Mann*, 2003 U.S. Dist. LEXIS 2758 (N.D. Cal. Feb. 25, 2003) (finding absent Canadian entity

8    "indispensable" where allegations reflect that tortious conduct "occurred primarily" in Canada).

9    What is more, even the snippets of emails Dr. Heredia has cherry picked and presented out of context

10   make plain that Intuitive did everything within its power to support his claim against DeLeC.  This is

11   the very opposite of a situation wherein "the conduct complained of was solely that" of Intuitive.

12   *Toyota*, 785 F.Supp.2d at 905; *Freeman*, 754 F.2d at 559 (foreign entity must be joined where "more

13   than a key witness whose testimony would be of inestimable value," but an "active participant" in

14   causing claimant's harm).

15         That Dr. Heredia may seek to paint Owens, Delgado, and Alvarez-Quintero's alleged

16   misrepresentations regarding DeLeC's reliability—the sole alleged grounds for direct liability against

17   Intuitive—as the source of his harm does not eliminate or even lessen the need to join DeLeC.  Even

18   if those statements of subjective opinion could constitute actionable falsehoods—and they do not—to

19   determine their truth or falsity, the Court will necessarily need to evaluate DeLeC's conduct and track

20   record to determine whether they comported with the substance of the underlying alleged

21   misrepresentation.  *See In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 899 (N.D. Cal.

22   2012) (where resolution of claims "require[s] a court to evaluate the conduct of an absent party … the

23   absent party is necessary pursuant to Rule 19(a)."); *Toyota*, 785 F.Supp.2d at 904 ("If an entity's

24   presence is critical to the disposition of important issues in the case, and/or its evidence will either

25   support the complaint or bolster the defense, it is a necessary party.").  At bottom, because each of

26   Dr. Heredia's claims turn on DeLeC's alleged misconduct, DeLeC is a necessary party.

27

28

INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 15-CV-02662-EJD

a.   **The Court Cannot Accord Complete Relief in DeLeC's Absence**

Because Dr. Heredia's claims against Intuitive hinge on the conduct of absent party DeLeC, "the court cannot accord complete relief between the parties."  Fed. R. Civ. P. 19(a)(1)(A); *see Toyota,* 785 F.Supp.2d at 906 ("[B]ecause Plaintiffs' claims implicate the entities responsible for the design, manufacture, distribution, and/or sale (or lease) of their vehicles [which resulted in loss to Plaintiffs], the Court finds that the foreign entities who undertook these activities with respect to Plaintiffs' vehicles are necessary to afford complete relief.").  So too here.  If Intuitive prevails in this action, Dr. Heredia may simply turn around, file suit in South America (as he claims to have successfully done against Trimedical (*see* FAC, ¶¶ 3, 40)), and seek another bite at the apple.  *Toyota,* 785 F.Supp.2d at 906 at 909 ("Plaintiffs will have an adequate remedy if the action is dismissed because, as they have already recognized, they could file suit in their respective home countries."). This is precisely what Rule 19 is intended to prevent.  *See Republic of Philippines v. Pimentel,* 553 U.S. 851, 871 (2008) (Rule 19 exists to facilitate "settling disputes by wholes whenever possible" and "the avoidance of multiple litigation.").

b.   **DeLeC's Interest in the Subject of this Action Requires Its Participation**

DeLeC is a necessary party for the independent reason that it has "an interest relating to the subject of the action and is so situated that disposing of [Dr. Heredia's claims] in [DeLeC's] absence may as a practical matter impair or impede [DeLeC's] ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i).  By Dr. Heredia's allegations, DeLeC alone is in possession of the money over which he brings suit, and thus plainly claims an interest in it.  *See, e.g.*, *Hi-Tech Gaming*, 2008 U.S. Dist. LEXIS 93740 at *16; *Acacia*, 2013 U.S. Dist. LEXIS 82959 at *14.  Moreover, DeLeC's alleged years-long refusal to refund the entirety of those funds reflects DeLeC's apparent belief in the strength of its legal interest in at least some of them.  *See Taylor v. BIA*, 325 F.Supp.2d 117, 1120 (S.D. Cal. 2011) ("The interest referenced in Rule 19(a)(2) is broadly construed to cover any significantly protectable or legally protectable interest in the subject of the litigation.").  Further, DeLeC retains a clear interest in defending itself against claims of fraud and theft, as well as a tangible business interest in proving its competence, trustworthiness, and ability to complete a transaction—characteristics at the heart of Intuitive's alleged misrepresentations.  *See Toyota*, 785

1    F.Supp.2d at 906-08.  At bottom, DeLeC must be joined because any judgment entered against

2    Intuitive regarding DeLeC's purported misconduct "might have a preclusive effect on [DeLeC] and

3    weaken [its] bargaining position and/or impair [its] ability to protect [its] own interests in any current

4    and future litigation."  *Id.* at 907.

5         In addition, DeLeC's presence is independently required under Rule 19(a)(1)(B)(ii), as

6    disposing of Dr. Heredia's claim in its absence will leave Intuitive "subject to a substantial risk of

7    incurring double, multiple, or otherwise inconsistent obligations because of [DeLeC's] interest."  For

8    example, in the event Dr. Heredia succeeds in holding Intuitive responsible for DeLeC's alleged

9    misconduct and Intuitive is thereby forced to "return" the $850,000 Dr. Heredia admits it never

10   received, Intuitive may be obliged to pursue relief against DeLeC in Argentina.  However, unlike as

11   to Dr. Heredia, DeLeC is not alleged to have engaged in any theft from or fraud on Intuitive, meaning

12   that Argentinian courts may decline to award damages against DeLeC.  Rule 19 exists to prevent

13   subjecting a defendant to such a risk of inconsistent obligations.  *See Toyota*, 785 F.Supp.2d at 909.

14                **2.   Although Necessary to this Action, DeLeC Cannot Feasibly Be Joined**

15        Although it is a necessary party to this litigation, and is subject to service of U.S. process (*see*

16   Tilley Decl., Ex. 2 (Argentina is signatory to Hague Convention)), DeLeC's joinder is not feasible

17   because joinder would deprive this Court of subject matter jurisdiction.[13]  *See, e.g.*, *Wilson*, 2012 U.S.

18   Dist. LEXIS 168264 at *16 ("Joinder of a nonparty under Rule 19 is not feasible where it would

19   destroy complete diversity of citizenship, thus depriving the court of subject matter jurisdiction.").

20   DeLeC (an Argentinian entity) and Dr. Heredia (a Bolivian citizen) are both foreign litigants, and

21   "[d]iversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants."  *Faysound,*

22   *Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 294 (9th Cir. 1989).

23                **3.   This Litigation May Not Proceed in DeLeC's Absence**

24        Where, as here, a necessary party cannot feasibly be joined, the Court must determine

25   whether, in equity and good conscience, the action may proceed or must be dismissed.  Fed. R. Civ.

26   P. 19(b).  Here, each of the Rule 19(b) factors counsels heavily in favor of dismissal.

27

28   [13]     In addition, based on the allegations in the FAC, DeLeC's joinder is not feasible for the
     separate reason that this Court lacks personal jurisdiction over it.

### a.  Risk of Prejudice to Absent Party DeLeC

Dismissal is appropriate because any judgment rendered in DeLeC's absence "might"—and certainly will—prejudice DeLeC.  Fed. R. Civ. P. 19(b)(1); *see also Expeditors*, 224 F.R.D. at 666 ("risk of prejudice to the absent party [is one of] the two most important considerations in the Rule 19 analysis.").  Dr. Heredia's claims center on DeLeC's alleged fraud and theft, meaning that DeLeC must have an opportunity to defend itself before any judgment affecting its interests may be rendered:

> Plaintiff has accused [absentee's] agents of wrongdoing. [Absentee] is therefore the proper party to defend itself against Plaintiff's accusations. If a jury were to agree with Plaintiff—perhaps because [named defendant] could not mount an adequate defense [of non-party's actions]—a judgment in Plaintiff's favor may as a practical matter impair or impede the [absentee's] ability to protect its interest.

*Paiute-Shoshone Indians*, 637 F.3d at 1001; *Toyota*, 785 F.Supp.2d at 908 ("[T]he Court finds that the unnamed foreign entities here would be prejudiced by the denial of an opportunity to defend" their practices).  It is no response that Dr. Heredia is seeking to hold only Intuitive ultimately responsible for DeLeC's conduct.  *See Toyota*, 785 F.Supp.2d at 908 (prejudice exists because, if shown to be culpable, absent foreign entity "may be subject to liability in a suit against" domestic affiliate); *Expeditors*, 224 F.R.D. at 668 (Heredia "cannot escape [absentee's] indispensability on the grounds that it was [named party's] agent.").  Nor may Dr. Heredia justify omitting DeLeC on the ground that any judgment here "would not be binding on the unnamed foreign entities[.]"  *Toyota*, 785 F.Supp.2d at 908 (even a non-binding adverse finding "speaks directly and adversely" to non-party's reputation and business interests).  Moreover, that Intuitive and DeLeC may both wish to refute Dr. Heredia's claims changes nothing, as their interests "may diverge at trial[:]"

> [Named defendant] may attempt to show that the absent entities are responsible for the allegedly defective design. On the other hand, if the absent entities were fully represented, they may want to ascribe blame to TMC and/or the other named defendants in order to deflect liability from themselves.

*Toyota*, 785 F.Supp.2d at 908; *see also Hi-Tech Gaming*, 2008 U.S. Dist. LEXIS 93740 at *14-15 (even an "identical incentive in litigating the action" does not defeat indispensability).  Finally, DeLeC may have unique factual or legal defenses under Argentinian or Bolivian law, as to which neither Intuitive nor its U.S. counsel is knowledgeable.  *See, e.g.*, *Toyota*, 785 F.Supp.2d at 907 ("[E]ven where domestic party and foreign absentee appear closely aligned, there is no evidence that

singer/bea LLP

1   U.S. counsel can adequately protect the foreign entity's interests[.]") (citing *Acton Co., Inc. v.*

2   *Bachman Foods, Inc*., 668 F.2d 76, 78 (1st Cir. 1982)).

### b.   Risk of Prejudice to Intuitive

4          The prejudice to Intuitive from proceeding in DeLeC's absence is no less grave.  <u>First</u>,

5   evidence regarding DeLeC's knowledge and intent in making alleged misrepresentations to Dr.

6   Heredia—required elements for the liability he wishes to impute to Intuitive—exists exclusively

7   within DeLeC's control.  But because DeLeC is beyond this Court's subpoena power (*see* Fed. R.

8   Civ. P. 45(c)), Intuitive has no (or limited) ability to obtain evidence necessary to resolve these

9   critical issues.  *See Paiute-Shoshone Indians*, 637 F.3d at 1001 ("Proceeding with this suit in the

10  absence of the [unnamed party] therefore would prejudice the City because the City by itself cannot

11  defend effectively against the crux of Plaintiff's allegations, even though those allegations may be

12  untrue."); *Toyota*, 785 F.Supp.2d at 904 (entity must be joined if its "presence is critical to the

13  disposition of important issues in the case, and/or its evidence will either support the complaint or

14  bolster the defense[.]").  Proceeding in DeLeC's absence thus presents an unacceptable "likelihood

15  here of multiple litigation, and of factfinding hamstringed by the absence of centrally implicated

16  actors in the drama."  *Toyota*, 785 F.Supp.2d at 908 (dismissing for failure to join foreign entity).

17          <u>Second</u>, if Dr. Heredia proves DeLeC's misconduct and recovers from Intuitive, Intuitive will

18  be ordered to "return" nearly a million dollars Dr. Heredia admits Intuitive never received, and could

19  be faced with a claim for punitive damages as well.  (*See* FAC, Prayer for Relief.)  Intuitive may then

20  be obliged to undertake a separate lawsuit against DeLeC, wherein Intuitive will need to rebuild a

21  case from the ground up because neither *res judicata* nor collateral estoppel could apply in light of

22  DeLeC's absence here.  *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110

23  (1968) ("[S]ince the outsider is not before the court, he cannot be bound by the judgment rendered.").

24  Again, Rule 19 exists to prevent precisely this type of "multiple litigation," particularly where, as set

25  forth below, there are adequate alternative fora wherein complete relief may be accorded.  *Republic*

26  *of Philippines*, 553 U.S. at 871; *Provident*, 390 U.S. at 111.

27

28

singer/bea LLP

c.   **There is No Way to Lessen or Avoid the Prejudice to DeLeC and Intuitive**

There is no plausible mechanism for the parties or the Court to lessen the prejudice from proceeding in DeLeC's absence.  Fed. R. Civ. P. 19(b)(2).  DeLeC cannot, for example, be joined as a co-defendant in this action because, as set forth above, naming DeLeC as a defendant would deprive the Court of subject matter jurisdiction.  *See Toyota*, 785 F.Supp.2d at 909 ("The Court conceives of no solution to lessen prejudice in the absence of the unnamed foreign entities" upon whose conduct plaintiffs' claims depend).

d.   **No Judgment Rendered in DeLeC's Absence Could be Adequate**

The law is clear that the Court should seek to promote the "public stake in settling disputes by wholes whenever possible[,] the societal interest in the efficient administration of justice[,] and the avoidance of multiple litigation."  *Republic of Philippines*, 553 U.S. at 871.  Each of these important interests suffers if this action is allowed to proceed in DeLeC's absence.  If Intuitive prevails, Dr. Heredia could file a second suit against DeLeC (and possibly also Intuitive), alleging the very same wrongdoing he does here.  Similarly, if Dr. Heredia prevails in holding Intuitive responsible for DeLeC's purported misconduct, Intuitive may be obliged to initiate a second suit against DeLeC.  *See Toyota*, 785 F.Supp.2d at 909 (defendant's legitimate interest in "avoid[ing] multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another… should not be ignored.").  Whatever the result, resolution of this dispute without DeLeC's involvement is unlikely to fully and finally resolve all claims between and among all interested parties.

e.   **Dr. Heredia Will Have Adequate Remedies if This Action is Dismissed**

Dr. Heredia cannot possibly bear his burden of showing that dismissal for nonjoinder will deprive him of any opportunity to recover the money held by DeLeC.  *See Expeditors*, 224 F.R.D. at 666 (dismissing where "Plaintiff has not established that it would not be able to seek relief in state court or in a Japanese court."); *see also Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1248 (9th Cir. 1998) (appearance of forum shopping negates any weight given to plaintiff's choice of forum).  To the contrary, Dr. Heredia may seek relief in at least Argentina.[14]  Argentina

---

[14]   It appears that Dr. Heredia also may seek relief in his native Bolivia.  Indeed, according to the FAC, he has successfully recovered from Trimedical the lion's share of the money he claims was stolen from him.  (FAC, ¶¶ 3, 40; *see Toyota*, 785 F.Supp.2d at 909 ("Plaintiffs will have an adequate

affords full and fair rights to litigants such as Dr. Heredia.  (*See* Declaration of Ramón I. Moyano, ¶¶ 8-11.)  In addition, Argentinian law recognizes causes of action for fraud and conversion, and provides for the monetary and other relief sought in the FAC.  (*See id.* at ¶¶ 27-33.)  Finally, as it is domiciled in Buenos Aires, DeLeC is subject to the jurisdiction of Argentinian courts.  (*Id.* at ¶ 26.)

Because dismissing this action for nonjoinder will not leave Dr. Heredia without a forum in which to pursue his claims, this "most important consideration[]" weighs in favor of dismissal. *Expeditors*, 224 F.R.D. at 666.

### C.  Leave to Amend Should be Denied

Because adjudication of Dr. Heredia's claims requires the participation of a party who cannot be joined without destroying diversity jurisdiction, the FAC must be dismissed with prejudice.  *See Toyota*, 785 F.Supp.2d at 925; *Taylor*, 325 F.Supp.2d at 1120 (dismissing with prejudice where "Plaintiffs' complaint in large part directly implicates" the conduct of foreign entities who cannot be joined).  Leave to amend should be denied for the further reason that, despite several opportunities, Dr. Heredia has failed to plead a single viable claim.  *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave appropriate in light of "repeated failure to cure deficiencies[.]"); *Cafasso*, 637 F.3d at 1058 ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

### CONCLUSION

For the foregoing reasons, Dr. Heredia's complaint and each cause of action stated therein should be dismissed with prejudice.

Date:  January 14, 2016                           Respectfully submitted,

                                                  SINGER / BEA LLP

                                                  By:___/s/ Adam Cashman_____
                                                      Adam Cashman
                                                      Renée B. Bea
                                                      Doug Tilley
                                                      *Attorneys for Defendant Intuitive Surgical, Inc.*

remedy if the action is dismissed because, as they have already recognized, they could file suit in their respective home countries.").)

I, Doug Tilley, am the ECF user whose ID and password are being used to file Intuitive's Motion to Dismiss.  In compliance with Local Rule 5-1(i), I hereby attest that Adam Cashman, co-counsel for Intuitive, has concurred in this filing.

Date:  January 14, 2016

_____
Doug Tilley

INTUITIVE SURGICAL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 15-CV-02662-EJD