1   SCHIFF HARDIN LLP
    JOHN S. WORDEN (SBN 142943)
2   jworden@schiffhardin.com
    JEAN-PAUL P. CART (SBN 267516)
3   jcart@schiffhardin.com
    One Market
4   Spear Street Tower, Suite 3200
    San Francisco, CA  94105
5   Telephone:    415.901.8700
    Facsimile:    415.901.8701
6
    Attorneys for Plaintiff
7   Rene Heredia

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  RENE HEREDIA,                          Case No.  15-CV-02662-EJD

12                Plaintiff,               **PLAINTIFF RENE HEREDIA'S
                                           OPPOSITION TO INTUITIVE SURGICAL,
13  v.                                     INC.'S MOTION TO DISMISS FIRST
                                           AMENDED COMPLAINT**
14  INTUITIVE SURGICAL, INC.,
                                           Hearing Date:            June 2, 2016
15                Defendant.               Original Filing Date:    June 12, 2015
                                           Trial Date:              TBD
16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION. .......................................................................................................... 1

II.  INTUITIVE'S NEW FACTUAL ALLEGATIONS MUST BE DISREGARDED. .......... 2

III. ARGUMENT. ................................................................................................................ 4

    A.   In Its Motion, Intuitive Again Exaggerates Applicable Pleading Standards. ......... 4

    B.   DR. HEREDIA ADEQUATELY PLED THE EXISTENCE OF AN
        AGENCY RELATIONSHIP BETWEEN INTUITIVE AND DELEC. ................. 6

        1.   The First Amended Complaint Clearly Implicates The Doctrine Of
            Ostensible Agency. ..................................................................................... 6

        2.   Dr. Heredia Has Plausibly Pled The Existence Of An Agency
            Relationship Between Intuitive And DeLeC. .............................................. 7

    C.   EACH OF DR. HEREDIA'S CLAIMS SATISFY THE APPLICABLE
        PLEADING REQUIREMENTS. .................................................................... 11

        1.   Dr. Heredia Has Pled A Valid Claim For Conversion. ............................ 11

        2.   Second Claim for Fraudulent Misrepresentation (Vicarious
            Liability) ................................................................................................... 12

        3.   Fourth and Fifth Claims for Fraudulent Misrepresentation and
            Negligent Misrepresentation (Direct Liability) ........................................ 15

        4.   Third Claim for Fraudulent Concealment (Direct Liability) .................... 18

    D.   THIS ACTION MAY PROCEED WITHOUT DELEC. .................................... 19

        1.   DeLeC Is Not A Necessary Party .............................................................. 19

            a.   The Court Can Accord Complete Relief Among Existing
                Parties. .......................................................................................... 20

            b.   DeLeC Does Not Claim Or Possess A Protectable Interest
                In This Action. ............................................................................. 21

            c.   This Action Does Not Leave Intuitive Subject To The Risk
                Of Incurring Inconsistent Obligations. ........................................ 24

        2.   Dismissal Of This Action Pursuant to Rule 19(b) Would Be
            Inequitable. ............................................................................................... 24

IV.  CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*24/7 Customer, Inc. v. 24-7 Intouch,*
2015 WL 1522236 (N.D. Cal. March 31, 2015) ...................................................................... 4, 5

*AE v. County of Tulare,*
2010 WL 1407857 (E.D. Cal. Apr. 7, 2010) ............................................................................... 8

*Am. Cas. Co. of Reading, Penn. v. Krieger,*
181 F.3d 1113 (9th Cir. 1999) ..................................................................................................... 6

*Am. Greyhound Racing, Inc. v. Hull,*
305 F.3d 1015 (9th Cir. 2002) ................................................................................................... 24

*Andrew Smith Co. v. Paul's Pak, Inc.,*
2010 WL 2465044 (N.D. Cal. Jun. 14, 2010) ..................................................................... 12, 18

*Anrig v. Ringsby United,*
603 F.2d 1319 (9th Cir. 1978) ................................................................................................... 25

*In re Apple iPhone Antitrust Litig.,*
874 F.Supp. 2d 889 (N.D. Cal. 2012) ....................................................................................... 20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................................... 5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................................... 4, 5, 8, 17

*Butler v. Aaron Med. Indust., Inc.,*
2004 WL 2271604 (N.D. Cal. Oct. 6, 2004) .................................................................. 13, 16, 17

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.,*
213 F.3d 474 (9th Cir. 2000) ....................................................................................................... 6

*C.R. v. Tenet Healthcare Corp.,*
169 Cal. App. 4th 1094 (2009) .................................................................................................. 10

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. Cal.,*
547 F.3d 962 (9th Cir. 2008) ..................................................................................................... 24

*Cafasso v. Gen. Dynamics C4 Sys.,*
637 F.3d 1047 (9th Cir. 2011) ............................................................................................... 5, 14

*City of Los Angeles v. Super. Ct.,*
33 Cal. App. 3d 778 (1973) ....................................................................................................... 10

*Clear-View Tech. v. Rasnick,*
2015 WL 1307112 (N.D. Cal. Mar. 23, 2015) ........................................................... 20, 22, 23, 24

*Coats v. Constr. & Gen. Laborers Local No. 185,*
15 Cal. App. 3d 908 (1971) ....................................................................................................... 10

*De Suza v. Andersack,*
63 Cal. App. 3d 694 (1976) ......................................................................................................... 9

*Eddy v. Sharp,*
199 Cal. App. 3d 858 (1988) ..................................................................................................... 18

*Edible Arrangements, LLC v. Provide Commerce, Inc.,*
2015 WL 1321441 (D. Conn. Mar. 24, 2015) .......................................................................... 25

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*Ermoian v. Desert Hosp.,*
   152 Cal. App. 4th 475 (2007) .................................................................. 6

4

*In re GlenFed, Inc. Sec. Litig.,*
   42 F.3d 1541 (9th Cir. 1994) ................................................................. 12

5

*Goodman v. Kennedy,*
   18 Cal. 3d 335 (1976) ........................................................................... 18

6

*Haas v. Jefferson Nat'l Bank of Miami Beach,*
   442 F.2d 394 (5th Cir. 1971) ................................................................ 22

7

8

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
   896 F.2d 1542 (9th Cir. 1990) ............................................................ 2, 3

9

*Heliotis v. Schuman,*
   181 Cal. App. 3d 646 (1986) ................................................................ 18

10

*Imageline v. CafePress.com Inc.,*
   2011 U.S. Dist. LEXIS 39828 (C.D. Cal. Apr. 6, 2011) ........................ 8

11

12

*J.L. v. Children's Inst., Inc.,*
   177 Cal. App. 4th 388 (2009) ................................................................. 6

13

*Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.,*
   456 F.Supp. 831, 847 (D.Del.1978) ..................................................... 25

14

*Kaplan v. Coldwell Banker Resid. Affs., Inc.,*
   59 Cal. App. 4th 741 (1997) ................................................................... 6

15

16

*Kelly v. R.F. Jones Co.,*
   272 Cal. App. 2d 113 (1969) .................................................................. 9

17

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) ................................................................ 3

18

*Lacher v. Super. Ct.,*
   230 Cal. App. 3d 1038 (1991) .............................................................. 18

19

20

*Laker Airways, Inc. v. British Airways, PLC,*
   182 F.3d 843 (11th Cir. 1999) .............................................................. 22

21

*Las Palmas Assocs. v. Las Palmas Center Assocs.,*
   235 Cal. App. 3d 1220 (1991) .................................................. 13, 16, 17

22

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) .................................................................. 4

23

*LiMandri v. Judkins,*
   52 Cal. App. 4th 326 (1997) ................................................................. 18

24

25

*Lopez v. Fed. Nat. Morg. Ass'n,*
   2013 WL 7098634 (C.D. Cal. Oct. 8, 2013) ........................................ 23

26

*Love v. U.S.,*
   915 F.2d 1242 (9th Cir. 1988) ................................................................ 5

27

*Maidhof v. Celaya,*
   2012 WL 1438805 (N.D. Cal. Apr. 25, 2012) .................................. 5, 14

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Mendiondo v. Centinella Hosp. Medical Center,*
    521 F.3d 1097 (9th Cir. 2008).................................................................... 4

*In re Metawave Comm. Corp. Sec. Litig.,*
    629 F. Supp. 2d 1207 (2009)...................................................................... 13

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.,*
    2007 WL 228839 (N.D. Cal. Aug. 9, 2007)....................................... 22, 23

*Minvielle v. Smile Seattle Invest., L.L.C.,*
    2008 WL 4962694 (W.D. Wa. Nov. 19, 2008)........................................ 12

*Moore v. Kayport Package Exp., Inc.,*
    885 F.2d 531 (9th Cir. 1989)..................................................................... 17

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.),*
    761 F. Supp. 2d 504 (2011)....................................................................... 17

*Northrop Corp. v. McDonnell Douglas Corp.,*
    705 F.2d 1030 (9th Cir. 1983).................................................................. 23

*Oculus Innovative Sciences Inc. v. Nofil Corp.,*
    2007 WL 205068 (N.D. Cal. Jan. 25, 2007) ............................................ 22

*Paiute-Shoshone Indians of Bishop Cmny. of Bishop Colony, Cal. v. City of Los Angeles,*
    637 F.3d 993 (9th Cir. 2011)............................................................... 24, 25

*Palomares v. Bear Stearns Residential Mortg. Corp.,*
    2008 WL 686683 (S.D. Cal. Mar. 13, 2008) .............................................. 8

*Petersen v. Allstate Indem. Co.,*
    281 F.R.D. 413 (C.D. Cal. 2012) ............................................................. 13

*Pink v. Revere Life Ins. Co.,*
    1999 WL 179684 (N.D. Cal. Mar. 24, 1999)........................................... 13

*Powers v. City of Seattle,*
    242 F.R.D. 566 (W.D. Wa. 2007) ............................................................ 23

*PRM Kauai, LLC v. Gibson,*
    2015 WL 4878580 (D. Haw. Jul. 23, 2015).............................................. 21

*Semegen v. Weidner,*
    780 F.2d 727 (9th Cir. 1985)...................................................................... 4

*Shopoff & Cavallo LLP v. Hyon,*
    167 Cal. App. 4th 1489 (2008) ................................................................. 11

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011)........................................................... 4, 5, 17

*Temple v. Synthes Corp., Ltd.,*
    498 U.S. 5 (1980) ...................................................................................... 22

*Tenzer v. Superscope,*
    39 Cal. 3d 18 (1985) ..................................................................... 13, 14, 16, 17

*Thompson v. Occidental Life Ins. Co.,*
    276 Cal. App. 3d 559 (1969).................................................................... 6

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page(s)**

3

*In re Torres,*
    2005 U.S. Dist. LEXIS 34672 (C.D. Cal. July 11, 2005) ...................................... 9, 10

4

*In re Toyota Motor Corp.,*
    785 F.Supp. 883 (C.D. Cal. 2011)..................................................................... 21, 22, 23, 24

5

*U.S. ex rel. Morongo Band of Mission Indians v. Rose,*
    4 F.3d 901 (9th Cir. 1994)..................................................................................... 23

6

*U.S. v. Bowen,*
    172 F.3d 682 (9th Cir. 1999)................................................................................. 23

7

*United Shoppers Exclusive v. Broadway-Hale Stores, Inc.,*
    1965 U.S. Dist. LEXIS 9845 (N.D. Cal. Nov  24, 1965)..................................... 10

8

9

*Ward v. Apple Inc., 791 F.3d,*
    1041 (9th Cir. 2015)...................................................................................... 21, 22, 23

10

*In re Wells Fargo Resid. Mort. Lending Discrimination Litig.,*
    2009 WL 2473684 (N.D. Cal. Aug. 11, 2009)..................................................... 23

11

**Authorities**

12

13

Cal. Civ. Code § 2300 ................................................................................................ 6

14

Cal. Civ. Code § 2317 ................................................................................................ 6

15

**Rules and Regulations**

16

Fed. R. Civ. P. 8(a) .................................................................................................... 4

17

Fed. R. Civ. P. 9(b) ......................................................................................... 12, 16, 17

Fed. R. Civ. P. 19 .............................................................................................. passim

18

Fed. R. Civ. P. 19(a) ............................................................................................ 2, 19

19

Fed. R. Civ. P. 19(a)(1) ............................................................................................ 19

20

Fed. R. Civ. P. 19(a)(1)(A) ............................................................................. 2, 20, 21

Fed. R. Civ. P. 19(a)(1)(B) ........................................................................ 2, 22, 23, 24

21

Fed. R. Civ. P. 19(b) ................................................................................................ 19

22

Fed. R. Evid. 201(b) .................................................................................................. 3

23

**Other Authorities**

24

Rest.2d Torts § 551 ................................................................................................... 18

25

26

27

28

- v -

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

1    I.    **INTRODUCTION.**

2         Plaintiff Rene Heredia ("Dr. Heredia") had $2,000,096 stolen from him.  Despite

3    receiving no assistance from Defendant Intuitive Surgical, Inc. ("Intuitive"), Dr. Heredia has been

4    able to recover all but $850,000 of the stolen funds.  Assuming Intuitive is telling the truth when

5    it denies receiving Dr. Heredia's funds, the $850,000 remains in the possession of Intuitive's

6    agent, DeLeC Cientifica Argentina AS ("DeLeC").  Dr. Heredia did not seek out DeLeC, and

7    originally intended to purchase Intuitive's *da Vinci* system directly from Intuitive.  Instead,

8    Intuitive told Dr. Heredia that his order needed to be placed through DeLeC and its sub-

9    distributor, Trimedical Bolivia ("Trimedical").  Intuitive then introduced Dr. Heredia to both

10   DeLeC and Trimedical, arranged joint meetings between Dr. Heredia and representatives of the

11   three companies, and facilitated the written agreement Dr. Heredia ultimately executed.  Intuitive

12   also explicitly assured Dr. Heredia that DeLeC could be trusted with his money, was Intuitive's

13   agent and partner, and that it was safe to move forward with the transaction.

14        Intuitive's representations were false.  DeLeC stole $850,000 of Dr. Heredia's money, and

15   Trimedical stole the rest.  Other than being able to claw back some of the money from

16   Trimedical, Dr. Heredia received nothing.  And Intuitive did nearly nothing in the face DeLeC's

17   fraud and theft.  It refused to assist Dr. Heredia, and to this day continues to direct potential

18   customers to DeLeC.  Moreover, the Intuitive employees Dr. Heredia spoke with—all managers

19   and senior sales representatives—knew of prior instances of similar misconduct by DeLeC, but

20   failed to disclose them.  Instead, they made false representations to Dr. Heredia to encourage him

21   to move forward with the process.  Additionally, while Dr. Heredia has adequately pled actual

22   agency, Intuitive certainly cloaked DeLeC with ostensible authority by explicitly stating that

23   DeLeC was its agent, assuring Dr. Heredia that DeLeC was Intuitive's means of operation in his

24   territory, and staffing its booths with DeLeC employees, among other words and conduct.

25        As required under the Federal Rules of Civil Procedure, the First Amended Complaint

26   contains short and plain factual statements explaining how and to what extent Dr. Heredia is

27   entitled to relief.  Intuitive cannot, and does not, assert that it does not understand the nature of

28   the claims alleged against it.  Without dispute, the First Amended Complaint satisfies the primary

1    impetus of the applicable pleading requirements: notice.  In its Motion to Dismiss First Amended

2    Complaint (the "Motion") (Dkt. No. 35), Intuitive focuses again on the "plausibility" requirement

3    in order to make an end-run around the fact that Dr. Heredia's allegations should be accepted as

4    true at this stage of the litigation and be viewed in the light most favorable to him.  In response to

5    the Court's prior Order (Dkt. No. 29), however, Dr. Heredia pleads a number of additional facts

6    in his First Amended Complaint that resolve the issues identified therein.  For example,

7    Dr. Heredia provides additional information regarding his communications with Intuitive, DeLeC

8    and Trimedical, including the admissions of an Intuitive employee regarding DeLeC's prior

9    misconduct and other facts demonstrating that the relevant Intuitive representatives had

10   knowledge of such misconduct.

11          Intuitive's demand for relief pursuant to Fed. R. Civ. P. 19 should also be denied.

12   Intuitive bears the burden of proof on this issue, and has failed to meet its burden as to whether

13   DeLeC is a necessary party under Fed. R. Civ. P. 19(a).  Intuitive provides no credible or

14   reasonable argument as to why this Court cannot provide complete relief as between Intuitive and

15   Dr. Heredia.  *See* Fed. R. Civ. P. 19(a)(1)(A).  Similarly, as DeLeC has not asserted a claim or

16   interest of any kind in this litigation, Intuitive cannot meet even the first requirement under Fed.

17   R. Civ. P. 19(a)(1)(B).  This fact alone is fatal to Intuitive's efforts, yet it has also failed to

18   demonstrate how the speculative and hypothetical prejudice it could face trumps the prejudice Dr.

19   Heredia would suffer if denied a forum for his claims.

20          Accordingly, Dr. Heredia respectfully requests that the Court deny the Motion.

21   **II.    INTUITIVE'S NEW FACTUAL ALLEGATIONS MUST BE DISREGARDED.**

22          The purpose of a motion to dismiss is to test the sufficiency of a plaintiff's pleading.  It is

23   not the appropriate vehicle for a defendant to allege new facts or argue that the plaintiff is

24   factually incorrect.  Binding precedent is quite clear on this point: Intuitive cannot allege new

25   facts in support of its Motion and any such allegations must be disregarded.  *Hal Roach Studios,*

26   *Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 fn. 19 (9th Cir. 1990).  In its Motion,

27   however, Intuitive does just that.  Specifically, Intuitive now claims that it does not have a

28   contractual relationship with DeLeC, but rather that DeLeC's exclusive distribution rights were

1    granted by Intuitive's Swiss "affiliate" Intuitive Surgical Sarl.  (*See* Dkt. No. 35, 2:28-3:6.)  This

2    allegation is a significant component of Intuitive's Motion and its argument that it had no

3    involvement in the harm suffered by Dr. Heredia.  Intuitive can, of course, make this allegation in

4    a motion for summary judgment.  But it must be ignored in connection with the Motion.  *Hal*

5    *Roach Studios*, 896 F.2d at 1555 fn. 19.

6         Intuitive also improperly attempts to insert new facts and allegations under the guise of its

7    Request for Judicial Notice (Dkt. No. 36).  In the First Amended Complaint, Dr. Heredia

8    referenced statements made by Intuitive's inside legal counsel, Chris Tom, to DeLeC.  (Dkt. No.

9    32, ¶ 42.)  Specifically, Dr. Heredia explained that Intuitive had already acknowledged that Dr.

10   Heredia's funds were being wrongfully held by DeLeC.  *Id.*  In its Motion, however, Intuitive

11   presumes that all of Mr. Tom's statements in the referenced email (*see* Dkt. No. 37-3) are the

12   functional equivalent of Dr. Heredia's allegations (*i.e.* that they are presumed true and/or

13   establish the existence of certain facts with regard to the Motion).  In this, Intuitive overreaches.

14        With regard to Mr. Tom's email, Intuitive asserts in its Request for Judicial notice that the

15   Court may consider the full text so as to "evaluate the context in which the statement appeared."

16   (Dkt. No. 36 at 3:5-10 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).)  Fair

17   enough, although notwithstanding Intuitive's allegations of "misleading quotations," Mr. Tom's

18   email bears out Dr. Heredia's allegation (*see* Dkt. No. 32, ¶ 42).  However, Mr. Tom's email to

19   DeLeC was not a contract with independent legal significant and force of law, it did not

20   demonstrate that Dr. Heredia's claims accrued outside of the statute of limitations, and it certainly

21   did not contain any admission by Dr. Heredia.  These are all potential examples where the email

22   could have some further significance on a motion to dismiss.  This is no such case.  Courts may

23   take judicial notice only of facts that are "not subject to reasonable dispute[.]"  Fed. R. Evid.

24   201(b).  Even when a court takes judicial notice of a document, the court presumes true only

25   undisputed facts.  Dr. Heredia disputes Mr. Tom's statements as to Intuitive's alleged lack of

26   knowledge regarding Dr. Heredia's dealings with DeLeC, as well as Intuitive's assertion that it

27   ever truly attempted to bring about the return of Dr. Heredia's $850,000.  Any statements to the

28   contrary in Mr. Tom's email—written to be given to Dr. Heredia and to this day the *only*

1   communication between Intuitive and DeLeC that has been disclosed—have no relevance in

2   connection with the Motion.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

3   (reversing grant of motion to dismiss based on district court's judicial notice of disputed facts

4   within a document subject to judicial notice for other purposes).

5   **III.   ARGUMENT.**

6       **A.   In Its Motion, Intuitive Again Exaggerates Applicable Pleading Standards.**

7       The fundamental purpose of Federal Rule of Civil Procedure 8(a) is to ensure that a

8   plaintiff "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it

9   rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *24/7 Customer, Inc. v. 24-7

10  Intouch*, 2015 WL 1522236 at *2 (N.D. Cal. March 31, 2015).  Put another way, a plaintiff must

11  allege facts sufficient to "give **fair notice** and to enable the opposing party to defend itself

12  effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis added).  The

13  requirement that a plaintiff plead a "cognizable legal theory" is simply a recognition of the fact

14  that the primary purpose of Rule 12(b)(6) is to protect defendants that might otherwise have little

15  idea what is truly being alleged against them.  *See Mendiondo v. Centinella Hosp. Medical

16  Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  This primary purpose—that a defendant has

17  adequate notice of the wrongs being alleged—is the same in the heightened pleading realm of

18  fraud allegations.  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) ("Rule 9(b) ensures

19  that allegations of fraud are specific enough to give defendants notice of the particular

20  misconduct which is alleged to constitute the fraud charged so that they can defend against the

21  charge and not just deny that they have done anything wrong.").

22      The only other gatekeeper requirement of Rule 8(a) is that plaintiff's factual allegations

23  "must plausibly suggest an entitlement to relief."  *Starr*, 652 F.3d at 1216.  Indeed, "[d]ismissal

24  under Rule 12(b)(6) is appropriate *only* where the complaint lacks a cognizable legal theory or

25  sufficient facts to support a cognizable legal theory."  *Mendiondo*, 521 F.3d at 1104 (emphasis

26  added); *24/7 Customer*, 2015 WL 1522236 at *2.  While the plausibility standard set forth in

27  *Twombly* does stand for the proposition that a "formulaic recitation of the elements of a cause of

28

1   action will not do," it does not open the door for a court to weigh a plaintiff's allegations against

2   whatever trial arguments a defendant may telegraph in their motion to dismiss.  As the Supreme

3   Court has made clear, the only reason a court may set aside a plaintiff's factual allegations is if

4   they are conclusory in nature.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("To be clear, we do

5   not reject these bald allegations on the ground that they are unrealistic or nonsensical. [] It is the

6   conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that

7   disentitles them to the presumption of truth.").

8          In its Motion, Intuitive asserts that: "[i]n assessing the plausibility of a *claim*, the Court

9   'draw[s] on judicial experience and common sense, and consider[s] obvious alternative

10  explanation[s].'"  (Dkt. No. 35 at 5:21-22 (citing *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d

11  1047, 1056 (9th Cir. 2011) (emphasis added).)  Listing an assortment of possible explanations,

12  Intuitive argues that *Cafasso* all-but invites a court to weigh evidence and evaluate the myriad of

13  explanations that could ultimately defeat liability—something prohibited even in the summary

14  judgment context.  The court in *Cafasso* did no such thing.  Instead, the court noted that the

15  plaintiff had not alleged a false claim at all.  *Cafasso*, 637 F.3d at 1056.  But rather than

16  immediately dismissing the plaintiff's claims on this basis, the court analyzed whether "in the

17  absence of pleading false claims, the complaint warrants an *inference* that false claims were part

18  of the alleged scheme."  *Id*. (emphasis added).

19         While the existence of an alternative explanation may be "so likely to be true that, as

20  between the two explanations [plaintiff's] was not plausible," the mere existence of plausible

21  alternative explanations is irrelevant.  *Maidhof v. Celaya*, 2012 WL 1438805, *7 (N.D. Cal. Apr.

22  25, 2012) (citing *Starr*, 652 F.3d at 1214).  Post-*Twombly*, courts still must generally accept the

23  allegations of a complaint as true and construe the facts alleged in the light most favorable to the

24  plaintiff.  *Love v. U.S.*, 915 F.2d 1242, 1245 (9th Cir. 1988); *24/7 Customer*, 2015 WL 1522236

25  at *2.

26

27

28

1

**B.      DR. HEREDIA ADEQUATELY PLED THE EXISTENCE OF AN AGENCY RELATIONSHIP BETWEEN INTUITIVE AND DELEC.**

2

3

**1.      The First Amended Complaint Clearly Implicates The Doctrine Of Ostensible Agency.**

4      Dr. Heredia fully satisfies his burden of pleading ostensible agency.  In the First Amended

5   Complaint—the allegations of which must be taken as true for present purposes—Dr. Heredia

6   alleges that he was explicitly told by Intuitive's senior sales staff that DeLeC was Intuitive's

7   agent and had its authority vis-à-vis Dr. Heredia's purchase of the *da Vinci* system.  This

8   allegation alone is sufficient.  Yet the facts alleged by Dr. Heredia also demonstrate that other

9   words and conduct by Intuitive, such as using DeLeC representatives to staff its tradeshow

10  booths, further cloaked DeLeC was the appearance of authority.  And as ostensible authority is

11  generally a question of fact ill-suited to determination even in the summary judgment context,

12  Intuitive cannot dispose of the issue in its Motion.

13     Section 2300 of the California Civil Code provides that: "An agency is ostensible when

14  the principal intentionally, or by want of ordinary care, causes a third person to believe another to

15  be his agent who is not really employed by him."  Cal. Civ. Code § 2300.  "Ostensible authority is

16  such as a principal, intentionally or by want of ordinary care, causes or allows a third person to

17  believe the agent possess."  Cal. Civ. Code § 2317.  Liability of a principal for the acts of its

18  ostensible agent rests on the doctrine of estoppel and contains three elements: (1) that the person

19  dealing with the agent must have a reasonable belief as to the agent's authority; (2) that this belief

20  must be generated by some act by the principal; and (3) that the person relying on the agent's

21  apparent authority was not negligent in maintaining their belief.  *J.L. v. Children's Inst., Inc.*, 177

22  Cal. App. 4th 388, 403-404 (2009); *Kaplan v. Coldwell Banker Resid. Affs., Inc.*, 59 Cal. App. 4th

23  741, 747 (1997); *Ermoian v. Desert Hosp.*, 152 Cal. App. 4th 475, 502-503 (2007).

24     Controlling authorities also make clear that ostensible authority is for a trier of fact to

25  resolve and generally cannot be decided even on summary judgment.  *Am. Cas. Co. of Reading,*

26  *Penn. v. Krieger*, 181 F.3d 1113, 1122 (9th Cir. 1999) (citing *Thompson v. Occidental Life Ins.*

27  *Co.*, 276 Cal. App. 3d 559 (1969)).  Under California law, ostensible authority can be found in the

28  absence of an explicit representation of authority by the principal.  *See C.A.R. Transp. Brokerage*

*Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Additionally, ostensible

authority may also be found where the principal transacts its business through the agent, knows

that the agent holds itself out as having authority but remains silent, or makes public

representations or demonstrations as to the agent's authority.  *Id.*

Here, Intuitive's representations as to DeLeC's authority were explicit.  Dr. Heredia

alleges that he was specifically told by members of Intuitive's senior sales team that DeLeC was

Intuitive's agent.[1]  (Dkt. No. 32, ¶ 14.)  Dr. Heredia also alleges that Intuitive conducts business

through DeLeC (*id.* at ¶¶ 14, 21, 22, 43, 44, 48), that Intuitive has DeLeC employees represent it

at trade shows using the Intuitive name and brand (*id.* at ¶ 28, 44), and that Intuitive provides

DeLeC with marketing materials created specifically for use by DeLeC (*id.* at ¶ 16).

Additionally, with seemingly no intervention by Intuitive, DeLeC regularly issues public

statements and demonstrations indicating that it manufactures the *da Vinci* system.[2]  (*Id.* at ¶¶45-

46.)  These statements convey to Dr. Heredia and the public at large that Intuitive and DeLeC are

functionally one in the same.

Accordingly, Dr. Heredia has adequately pled that he had a reasonable belief as to the

existence of an agency relationship between Intuitive and DeLeC, that this belief was directly

caused by Intuitive's own conduct and statements, and that Dr. Heredia was entitled to rely on

such conduct and statements by Intuitive.

### 2.    Dr. Heredia Has Plausibly Pled The Existence Of An Agency Relationship Between Intuitive And DeLeC.

In its attacks on Dr. Heredia's agency allegations, Intuitive misrepresents Dr. Heredia's

allegations, ignores others entirely, and essentially asks this Court to weigh evidence and draw

undue inferences against Dr. Heredia.  Yet the fact that Dr. Heredia was required to amend his

Complaint does not alter the applicable standards in any way or create a presumption that Dr.

Heredia's allegations may be cast aside in favor of Intuitive's version of events.  Viewed in the

---

[1] While the Court noted in its prior order that statements by Intuitive employees that DeLeC was its agent were conclusory in the context of establishing *actual* agency, they are certainly indicative of the fact that Intuitive's words and conduct caused Dr. Heredia to reasonably believe that DeLeC was Intuitive's agent.  Simply put, Dr. Heredia believed what he was told.
[2] Intuitive must be aware of such statements if conducting reasonable diligence.

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

1   correct light, Dr. Heredia has also satisfied his burden under *Twombly* of plausibly pleading

2   actual agency as between Intuitive and DeLeC.

3           Intuitive's first attack on Dr. Heredia's agency allegations is that the First Amended

4   Complaint proves that Intuitive has no control over DeLeC.  (Dkt. No. 35, 11:25-12:2.)

5   Specifically, Intuitive alleges that statements by its own inside legal counsel, Chris Tom, prove

6   that it does not have the right to control DeLeC.  (*Id.* at 8:11-20.)  As explained in Section II,

7   *supra*, Mr. Tom's statements in an email to DeLeC are not proof of anything, they were not

8   alleged by Dr. Heredia to be accurate, and they certainly cannot be credited as true for purposes

9   of this Motion.  Moreover, it bears noting that Mr. Tom's email was drafted so as to be forwarded

10  to Dr. Heredia—and despite the service of discovery requests months before the Court granted

11  Intuitive's prior motion, is the only written communication between Intuitive and DeLeC that

12  Intuitive has ever disclosed.  From the facts alleged, it cannot be concluded or assumed that

13  Intuitive has made any attempt to bring about the return of Dr. Heredia's $850,000.  In fact, the

14  allegations of the First Amended Complaint demonstrate that Intuitive has been entirely unoved

15  by the fraud and theft of DeLeC.  (Dkt. No. 32, ¶¶ 36-38.)

16          The authorities cited by Intuitive regarding the issue of control provide little light as to

17  whether Dr. Heredia's allegations are sufficient.  In *Imageline, Inc. v. CafePress.com Inc*., the

18  court noted that the plaintiff's *only* agency allegation was that each defendant was the "agent,

19  partner, [etc.] . . . of each of the remaining defendants and was at all times  . . .  acting within the

20  course and scope and purpose of said agency, employment, [etc.]."  *Imageline v. CafePress.com*

21  *Inc*., 2011 U.S. Dist. LEXIS 39828, *13 (C.D. Cal. Apr. 6, 2011).  The agency allegations at issue

22  in *Palomares v. Bear Stearns Residential Mortg. Corp.* were similarly vague, with plaintiff

23  alleging only that "each and every Defendant was an agent and/or employee of each and every

24  other Defendant [and] was acting within the course and scope of this agency or employment []."

25  *Palomares v. Bear Stearns Residential Mortg. Corp.*, 2008 WL 686683, *5 (S.D. Cal. Mar. 13,

26  2008)[3].  And in *AE v. County of Tulare*, the plaintiff seemingly only alleged that the defendants

27

28  _____
    [3] Also available at 2008 U.S. Dist. LEXIS 19407.

1    "made such statement in the course and scope [] of their agency []."  2010 WL 1407857, *2 (E.D.

2    Cal. Apr. 7, 2010)[4].  Here, by contrast, Dr. Heredia alleges that Intuitive has had an extensive

3    contractual relationship with DeLeC (Dkt. No. 32, ¶ 49), provides DeLeC with the co-branded

4    materials it uses for marketing (*id*. at ¶ 54), controlled DeLeC's ability to obtain the *da Vinci*

5    system (*id*. at ¶ 69), and assigned tradeshow marketing functions to DeLeC employees (*id*. at ¶

6    28).  Additionally, three Intuitive employees, collectively comprising Intuitive's senior sales team

7    for Latin America, promised Dr. Heredia that Intuitive would assure the return of his funds from

8    DeLeC—tacitly admitting that Intuitive has the ability to do so.  (*Id*. at ¶¶ 36-38.)[5]  That Intuitive

9    ultimately declined to exercise this control and/or assist Dr. Heredia is irrelevant. *See De Suza v.*

10   *Andersack*, 63 Cal. App. 3d 694, 699 (1976) (noting that a principal's actual exercise of control or

11   supervision is not required to establish the existence of an agency relationship).  Moreover, an

12   agent's authority may be proven through circumstantial evidence, a burden that is satisfied here.

13   *See Kelly v. R.F. Jones Co.*, 272 Cal. App. 2d 113, 120 (1969).

14        Intuitive's next argument addresses "Dr. Heredia's contention that DeLeC's status as

15   'exclusive distributor' makes it Intuitive's agent."  (Dkt. No. 35 at 12:10-11.)  Dr. Heredia's First

16   Amended Complaint contains no such allegation and Intuitive's straw-man argument should be

17   rejected.  There certainly may be cases where an exclusive distribution agreement does not create

18   an agency relationship.  But there are also cases where a contract labeled as an exclusive

19   distribution agreement does, in fact, create an agency relationship.  While Intuitive has refused to

20   produce its agreement with DeLeC, Dr. Heredia alleges the latter.  The authorities citied by

21   Intuitive do not demonstrate that this claim fails as a matter of law.  For example, *In re Torres*

22   does not stand for the blanket proposition that a so-called "exclusive distributor" is never an

23   agent.  *See In re Torres*, 2005 U.S. Dist. LEXIS 34672 (C.D. Cal. July 11, 2005).  Rather, the

24

25   _____
     [4] Also available at 2010 U.S. Dist. LEXIS 34109.

26   [5] Additionally, it bears noting that Intuitive has refused to produce its written contract(s) with
     DeLeC.  As is typically the case, this agreement likely contains provisions granting Intuitive the

27   right to control DeLeC operations vis-à-vis the *da Vinci* system.  Dr. Heredia is certainly not
     alone in being unable to allege specific contractual language—such is the case for most plaintiffs

28   pleading agency in a similar context.  His lack of knowledge of the terms of Intuitive's contract
     with DeLeC does not render his claims *implausible* or deny Intuitive *notice* of his allegations.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

1   court in *In re Torres* analyzed the specific language of a Distributorship Agreement, found that it

2   did not grant any control to the alleged principal, and granted *summary judgment* on that basis.

3   *Id*. at *64-68.  Similarly, *United Shoppers Exclusive v. Broadway-Hale Stores, Inc.*, stands only

4   for the proposition that retailers are not necessarily agents of the manufacturer—a non-

5   controversial proposition that Dr. Heredia does not challenge here.  *See United Shoppers*

6   *Exclusive v. Broadway-Hale Stores, Inc.*, 1965 U.S. Dist. LEXIS 9845, *17-18 (N.D. Cal. Nov

7   24, 1965).

8         Intuitive's related argument that DeLeC exceeded the scope of its alleged agency also

9   misses the mark, and is based on an (intentional) misunderstanding of what Dr. Heredia alleges.

10   Intuitive appears to claim that, because Intuitive granted exclusive distribution rights for Bolivia

11   to DeLeC, DeLeC exceeded the scope of its authority by structuring the transaction through

12   Trimedical.  None of the allegations of the First Amended Complaint support this argument.  To

13   the contrary, Dr. Heredia alleges that Trimedical's role and involvement in the underlying action

14   was well-known to and sanctioned by Intuitive.  (Dkt. No. 32, ¶¶ 21, 22.)  Indeed, Intuitive

15   introduced Dr. Heredia to Trimedical and was involved in the relevant discussions between Dr.

16   Heredia and Trimedical.  (*Id*.)

17         With regard to Intuitive's arguments as to ratification, California law is clear that the

18   principal's ratification may be implied through its conduct.  *See C.R. v. Tenet Healthcare Corp.*,

19   169 Cal. App. 4th 1094, 1110 (2009).  Courts have widely recognized that ratification can be

20   implied where the principal learns of the alleged misconduct and fails to discharge the agent.  *Id.*

21   (citing *City of Los Angeles v. Super. Ct.*, 33 Cal. App. 3d 778, 782-83 (1973) and *Coats v. Constr.*

22   *& Gen. Laborers Local No. 185*, 15 Cal. App. 3d 908, 914 (1971)).  In the present case, any

23   contention by Intuitive that it has discharged DeLeC is both unsupported in the record and

24   factually inaccurate.  Intuitive's relationship with DeLeC continues unabated despite Intuitive's

25   full knowledge of fraud and theft by DeLeC.  Indeed, Intuitive's website still directs customers to

26   DeLeC.  (Dkt. No. 32, ¶ 43.)  Additionally, as the very concept of agency liability necessary

27   implies that the agent did something wrong or improper, Intuitive cannot point to any authorities

28   dictating that a principal may pick and choose—after the fact—which actions by its agents it

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

should be responsible for.

Accordingly, Dr. Heredia has adequately pled the existence of an agency relationship as between Intuitive and DeLeC.  The Motion should therefore be denied.

## C.   EACH OF DR. HEREDIA'S CLAIMS SATISFY THE APPLICABLE PLEADING REQUIREMENTS.

### 1.   Dr. Heredia Has Pled A Valid Claim For Conversion.

Dr. Heredia's conversion claim was clearly stated in the First Amended Complaint and sets forth a plausible and cognizable legal theory.  Specifically, Dr. Heredia alleges that he paid $2,000,096 toward the $2,744,000 purchase price of Intuitive's *da Vinci* system (Dkt. No. 32, ¶ 58), that he received absolutely nothing in return (*id*. at ¶ 59), and that Intuitive or its agent, DeLeC, are currently in wrongful possession of at least $850,000 that belongs to Dr. Heredia (*id*. at ¶¶ 61-63).

The three elements of a conversion claim are simple and non-controversial: (1) plaintiff's ownership or right to possession; (2) defendant's conversion by a wrongful act; and (3) damages. *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1507 (2008).  Intuitive does not dispute that Dr. Heredia has satisfied his pleading obligations with regard to the first and third elements of conversion.  Its previously-addressed agency arguments aside, Intuitive's entire argument challenging the pleading sufficiency of Dr. Heredia's conversion claim, therefore, relates to whether Dr. Heredia has adequately pled Intuitive's conversion by a wrongful act.  In the First Amended Complaint, Dr. Heredia alleges that Intuitive is liable for DeLeC's wrongful possession of his $850,000 because DeLeC wrongfully obtained Dr. Heredia's funds while acting as an agent of Intuitive, and that DeLeC is still Intuitive's agent. (*See e.g.*, Dkt. No. 32, ¶ 3, 41, 48, 64.)

Notably, Intuitive does not dispute that a principal may be found liable for their agent's conversion.  Nor would such a rule be equitable where, as here, it was the agency relationship itself that facilitated the agent's wrongful conversion of plaintiff's property.  And as discussed in detail above, Dr. Heredia plausibly alleges in his First Amended Complaint the existence of an agency relationship between Intuitive and DeLeC.  (*See* Section III-B, *supra*.)  Additionally, Dr. Heredia alleges that Intuitive has already recognized the wrongful nature of DeLeC's conduct,

1   and that Dr. Heredia's $850,000 should be returned.  (Dkt. No. 32, ¶42.)

2          Accordingly, Dr. Heredia has met his burden of pleading his First Claim for conversion

3   and the Motion should be denied.

4                    **2.      Second Claim for Fraudulent Misrepresentation (Vicarious**
                             **Liability).**
5
           In his Second Claim for Fraudulent Misrepresentation – Vicarious Liability, Dr. Heredia
6
    seeks to hold Intuitive responsible for misrepresentations by its agent, DeLeC, regarding DeLeC's
7
    representations that it would honor the agreement by which Dr. Heredia sought to purchase the *da*
8
    *Vinci* system.  As explained in the First Amended Complaint, DeLeC was involved in arranging
9
    Dr. Heredia's written agreement with Trimedical—described at that time as DeLeC's agent and
10
    sub-distributor for Bolivia.  (Dkt. No. 32, ¶¶ 2, 18, 21, 25.)  Additionally, DeLeC represented to
11
    Dr. Heredia that payments made to Trimedical would be passed on to DeLeC, which would
12
    obtain the *da Vinci* machine for ultimate delivery to Dr. Heredia.  (*Id.* at ¶¶ 29, 30, 69.)  Dr.
13
    Heredia alleges that DeLeC did not intend to honor these promises and representations, a fact
14
    amply demonstrated by its theft of $850,000 without as much as a pretense of justification.  (*Id.* at
15
    ¶¶ 71-76.)  In addition to claiming that Dr. Heredia has pled agency—addressed in Section III-B,
16
    *supra*—Intuitive challenges the sufficiency of Dr. Heredia's allegations that DeLeC's
17
    representations were false when made.  The allegations of the First Amended Complaint
18
    demonstrate otherwise.
19
           With regard to the question of whether DeLeC's representations were false when made,
20
    the Court recognized in its prior order that "malice, intent, knowledge, and other conditions of a
21
    person's mind" may be alleged generally.  (Dkt. No. 29 at 10:3-6 (citing *In re GlenFed, Inc. Sec.*
22
    *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).)  Indeed, Fed. R. Civ. P. 9(b) says as much, and in no
23
    uncertain terms.  Courts often find general allegations of fraudulent intent, knowledge of falsity,
24
    and/or intent to induce reliance sufficient.  *See Andrew Smith Co. v. Paul's Pak, Inc.*, 2010 WL
25
    2465044, *3 (N.D. Cal. Jun. 14, 2010) ("[Rule 9(b)] permits general allegations of knowledge,
26
    intent, and other conditions of a person's mind.  Thus, the Counterclaim's general allegations of
27
    knowledge of falsity and intent to induce reliance are sufficient."); *Minvielle v. Smile Seattle*

28

1  *Invest., L.L.C.*, 2008 WL 4962694, *4 (W.D. Wa. Nov. 19, 2008); *see also In re Metawave*

2  *Comm. Corp. Sec. Litig.*, 629 F. Supp. 2d 1207, 1214 (2009) (comparing the general pleading

3  requirement of Rule 9(b) with the "strong inference" standard set forth in the Private Securities

4  Litigation Reform Act ("PSLRA")).

5          In its Motion, Intuitive cites to *Tenzer v. Superscope*, 39 Cal. 3d 18, 30-31 (1985) for the

6  proposition that mere non-performance does not prove fraud.  In *Tenzer*, as in many other cases,

7  the court recognized that "fraudulent intent must often be established by circumstantial evidence."

8  *Tenzer*, 39 Cal. 3d at 30; *see also Butler v. Aaron Med. Indust., Inc.*, 2004 WL 2271604,*4 (N.D.

9  Cal. Oct. 6, 2004) ("Fraudulent intent is ordinarily proved by inference rather than by direct

10  evidence.").  *Tenzer* does not stand for the proposition that nonperformance is *irrelevant* to the

11  inquiry.  *See Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal. App. 3d 1220, 1239

12  (1991) (referencing *Tenzer* and finding that "rarely does a plaintiff have direct evidence of a

13  defendant's fraudulent intent.  Therefore, subsequent conduct of a defendant, such as his failure to

14  immediately carry out his pledge has some evidentiary value to show that a defendant made the

15  promise without the intent to keep the obligation.").  Instead, the court's decision in *Tenzer*

16  requires only a showing of something more than non-performance (*e.g.*, "such circumstances as

17  defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt

18  performance, or his continued assurances after it was clear he would not perform.").  *Tenzer*, 39

19  Cal. 3d at 30.  Other courts have found that fraudulent intent can be inferred where a promise is

20  violated without an attempt to provide justification.  *See Petersen v. Allstate Indem. Co.*, 281

21  F.R.D. 413, 421 (C.D. Cal. 2012) ("Defendant's misrepresentation of its intent to perform is

22  shown by its alleged failure to pay a covered claim and failure to provide a more substantiated

23  explanation of its denial of coverage."); *Pink v. Revere Life Ins. Co.*, 1999 WL 179684 (N.D. Cal.

24  Mar. 24, 1999) (finding lack of reasonable explanation for nonperformance demonstrated intent

25  not to perform).

26          In the present case, not only has DeLeC stolen all of the funds it received from

27  Trimedical, in contravention of its representations to Dr. Heredia, but it is failed to provide any

28  justification for its actions.  Specifically, Dr. Heredia alleges that DeLeC has never claimed that it

1    has any right to the $850,000 at issue—it stole these funds without attempting to make a legal

2    claim of ownership or proper possession.  (Dkt. No. 32, ¶¶ 75-76.)  DeLeC also provided

3    "continued assurances" (*see Tenzer*, 39 Cal. 3d at 30) that it would return Dr. Heredia's funds,

4    disappeared, and has avoided Dr. Heredia ever since.  (*Id*. at ¶ 75.)  Additionally, Dr. Heredia has

5    alleged that DeLeC has engaged in similar misconduct in the past—a fact that surely reflects on

6    DeLeC's fraudulent intent here.[6]  (*Id*. at ¶ 38.)

7          Intuitive's suggestions of "alternative explanations" are irrelevant.  As explained in

8    Section III-A, *supra*, *Cafasso v. Gen Dynamics* does not invite courts (or litigants) to conjure up

9    various hypotheticals that *might* have taken place or that *might* demonstrate that fraudulent

10   conduct was simply an honest mistake.  Rather, *Cafasso* is applicable where a court considers

11   whether the allegations of a complaint support the inference of a required allegation that was not

12   made.  *See Cafasso*, 637 F.3d at 1056.  And, more generally, the existence of an alternative

13   explanation is only relevant when it is so likely to be true that it renders the plaintiff's theory

14   implausible.  *See Maidhof*, 2012 WL 1438805 at *7.  Accordingly, Intuitive's suggestions that

15   *perhaps* Dr. Heredia was in breach of his agreement (he was not), or *perhaps* some unknown and

16   unspecified aspect of Bolivian or Argentinian law justifies DeLeC actions, are irrelevant[7].

17   Requiring a plaintiff to plead the absence of all alternative explanations a defendant may propose

18   (after the fact) would certainly mark a significant change in the law.  This contention should be

19   rejected.

20          Accordingly, Dr. Heredia has met his pleading obligations on his Second Claim for

21   fraudulent misrepresentation.  Intuitive's Motion should be denied.

22

23

24

---

25   [6] To the extent that Intuitive claims that Mr. Alvarez-Quintero's statements of prior DeLeC misconduct are somehow vague or incomplete, it must be noted that Mr. Alvarez-Quintero is Intuitive's own employee.  Dr. Heredia requested additional information and Mr. Alvarez-Quintero *refused* to provide it.  (*Id*. at ¶38.)

26

27   [7] In its Motion, Intuitive claims that DeLeC has agreed to return the majority of Dr. Heredia's funds, "less a 8-11% transactional cost."  (Dkt. No. 35, 11:3-6.)  This statement is false.  While DeLeC made this offer, it then disappeared and Dr. Heredia has not heard from DeLeC in some time.  (Dkt. No. 32, ¶ 34.)

28

3.      **Fourth and Fifth Claims for Fraudulent Misrepresentation and Negligent Misrepresentation (Direct Liability).**

Dr. Heredia's claims for fraudulent and negligent misrepresentation are based on Intuitive's false representations regarding DeLeC. Specifically, Intuitive stated that DeLeC was competent and trustworthy, and assured Dr. Heredia that it was safe for him to complete his purchase of the *da Vinci* system through DeLeC. Dr. Heredia relied on these assurances and paid over $2,000,000. But because DeLeC was none of the things Intuitive claimed it to be—and instead, engaged in fraud and essentially stole $850,000—Dr. Heredia lost a substantial amount of money he otherwise would not have paid. As alleged in the First Amended Complaint, DeLeC's conduct vis-à-vis Dr. Heredia does not appear to be an outlier. In what seems to have been a brief flash of candor, one of the Intuitive employees Dr. Heredia had been in contact with throughout the process admitted that Intuitive had faced similar problems with DeLeC over the last few years. This is information directly contradicts the assurances made to Dr. Heredia when he was a potential customer considering whether or not to purchase the *da Vinci* system.

As an initial matter, Intuitive's arguments are based in large part on its assertion that Mr. Alvarez-Quintero—an Intuitive employee and Dr. Heredia's source of information—"was ***unable*** to state 'the precise nature of the complaints Intuitive had received previously.'" (Dkt. No. 35, 15:23-16:1 (citing Dkt. No. 32, ¶¶ 95, 106).) This troublesome distortion of Dr. Heredia's claims, which certainly implies a *lack* of knowledge by Mr. Alvarez-Quintero, is patently false. The cited portions of the First Amended Complaint state: "When asked to provide additional information, Mr. Alvarez-Quintero ***expressly refused*** to disclose the precise nature of the complaints Intuitive had received previously." (Dkt. No. 32, ¶¶ 95, 106.) That is, when confronted with information regarding DeLeC's fraud and conversion, Mr. Alvarez-Quintero admitted that "Intuitive had dealt with *similar* problems from DeLeC and Mr. Lecour *over the past few years*." (*Id*. at ¶ 38 (emphasis added).) Dr. Heredia requested additional information, but Mr. Alvarez-Quintero was unwilling to provide it to him. (*Id*.) This is also consistent with the pattern of Ms. Owens and Mr. La Mendola attempting to avoid speaking with Dr. Heredia after the problems with DeLeC came to light. (*Id*. at ¶¶ 36, 37). As further demonstrated by Intuitive's refusal to produce any

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

1    documents in this litigation (*e.g.*, its written agreement with DeLeC) (*id.* at ¶ 56), Intuitive has

2    sought to prevent Dr. Heredia from learning additional information that could further bolster his

3    claims.  The success of Intuitive's efforts in this regard do not render Dr. Heredia's claims

4    *implausible*, nor do they bear on Intuitive's notice of the claims alleged against it.

5          Intuitive's first argument against Dr. Heredia's misrepresentation claims is that Dr.

6    Heredia has not pled with specificity that the Intuitive employees he spoke with in 2011 and 2012

7    knew about DeLeC's history of misconduct at that time.  (Dkt. No. 35, 15:14-15:14.)  As

8    explained above in Section III-C(1), *supra*, "[m]alice, intent, knowledge, and other conditions of

9    a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).[8]  Dr. Heredia is therefore not

10   required to allege with particularity how Intuitive, Ms. Owens , Mr. Delgado and Mr. Alvarez-

11   Quintero knew of DeLeC's poor track record, their intent, nor even what specific complaints they

12   were aware of in 2011 and 2012.  Dr. Heredia obviously could not review all of Intuitive's

13   complaints regarding DeLeC before filing suit, and from a practical perspective, it would be

14   impossible for Dr. Heredia—or any plaintiff, for that matter—to do what Intuitive demands.

15         Yet, Mr. Alvarez-Quintero has admitted that he knew of prior misconduct by DeLeC, and

16   that this prior misconduct had taken place over the prior few years (*i.e.,* within 2011 and 2012).

17   (Dkt. No. 32, ¶ 38.)  Additional allegations in the First Amended Complaint demonstrate that Dr.

18   Heredia's allegations of Ms. Owens, Mr. Delgado, Mr. La Mendola and Mr. Alvarez-Quintero's

19   contemporaneous knowledge of these prior acts of misconduct are clearly plausible.  At all

20   relevant times, Ms. Owens was Intuitive's Sales Manager for Latin America, Canada and

21   Australia (*id.* at ¶ 13), Mr. Delgado was an Intuitive sales representative whose territory included

22   Latin America (*id.*), Mr. La Mendola was Intuitive's Senior Clinical Sales Representative for

23   Latin America (*id.*), and Mr. Alvarez-Quintero was Intuitive's Capital/Clinical Territory Manager

24   for Latin America (*id.* ¶ 20).  Mr. Alvarez-Quintero has stated that one of his job responsibilities

25   was to "manage Intuitive's distributors."  (*Id.*)  Thus, Dr. Heredia spoke with the very

26

27   [8] *See also Tenzer*, 39 Cal. 3d at 30 ("fraudulent intent must often be established by circumstantial
     evidence"); *Butler*, 2004 WL 2271604 at *4 ("fraudulent intent is ordinarily proved by inference
     rather than by direct evidence."); *Las Palmas Assocs.*, 235 Cal. App. 3d at 1239 ("rarely does a
28   plaintiff have direct evidence of a defendant's fraudulent intent").

1   individuals—managers and senior representatives—that were responsible for DeLeC's territory

2   and would have known about its prior misconduct.[9]  Indeed, Mr. Alvarez-Quintero *did* know

3   about DeLeC's conduct and Dr. Heredia's own course of conduct is a prime example of the fact

4   that Intuitive's territory managers and senior representatives were in direct contact with

5   customers in their territory.  These considerations directly address, and resolve, the Court's prior

6   concerns as to why Intuitive's representatives "should be charged with knowledge of customer

7   complaints made to their employer."  (Dkt. No. 35 at 16:9-10.)  These individuals were the public

8   face and direct line of communication between Intuitive and its customers in Latin America.

9   Ultimately, Dr. Heredia's allegations are far more than mere conclusions and he has alleged

10  enough facts to "raise a reasonable expectation that discovery will reveal evidence to support the

11  allegations."  *Starr*, 652 F.3d at 1217 (quoting *Twombly*, 550 U.S. at 556).

12          Intuitive next alleges that Dr. Heredia has failed to adequately plead that Intuitive

13  attempted to defraud him making misrepresentations regarding DeLeC.  (Dkt. No. 35, 17:1-9.)

14  As explained herein, however, intent may be pled generally pursuant to Fed. R. Civ. P. 9(b), and

15  must often be demonstrated through circumstantial evidence even at trial.  *See Tenzer*, 39 Cal. 3d

16  at 30; *Butler*, 2004 WL 2271604 at *4; *Las Palmas Assocs.*, 235 Cal. App. 3d at 1239.  The one

17  case cited by Intuitive on this issue, *Newby v. Enron Corp.* (*In re Enron Corp. Sec., Derivative &*

18  *ERISA Litig.*), 761 F. Supp. 2d 504, 576 (2011), changes nothing in this regard.  In *Newby*,

19  plaintiffs brought claims of common law fraud under Texas law.  *See Newby*, 761 F. Supp. 2d at

20  536.  Texas law on this issue is different than California law, requiring significant factual detail

21  for claims of scienter and drawing comparisons to the "stronge inference" standard under the

22  PSLRA.  *See id.*  Moreover, the Ninth Circuit has explicitly found that the burden of pleading

23  fraud with particularly "may be relaxed as to matters within the opposing party's knowledge."

24  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

25          Intuitive's final attack on Dr. Heredia's negligent misrepresentation claim—lack of duty

26  to disclose—is based solely on the claims already addressed above.  Moreover, the authority

27

28  [9] Not surprisingly, therefore, it was Ms. Owens, Mr. Delgado and Mr. La Mendola that introduced Dr. Heredia to DeLeC.  (*Id.* at ¶¶ 14, 21.)

1  Intuitive cites on this issue, *Eddy v. Sharp*, 199 Cal. App. 3d 858 (1988), states that:

2      One party to a business transaction is under a duty to exercise reasonable care to
       disclose to the other before a transaction is consummated, … the facts basic to the
3      transaction, if he knows that the other is about to enter into it under a mistake as
       to them, and that the other, because of the relationship between them, the customs
4      of the trade or other objective circumstances, would reasonably expect a
       disclosure of those facts.
5

6  199 Cal. App. 3d at 864-65 (quoting Rest.2d Torts § 551) (denying summary judgment on the

7  grounds that there existed a triable issue of fact as to plaintiff's negligent misrepresentation

8  claim); *see Lacher v. Super. Ct.*, 230 Cal. App. 3d 1038, 1047-48 (1991) ("A contractual or

9  fiduciary relationship is not also required before liability for negligent misrepresentation may be

10 found.")  Additionally, a duty to disclose may exist where one party to a transaction has sole

11 knowledge or access to material facts and knows that such information is not known or

12 reasonably discoverable by the other party.  *Andrew Smith Co. v. Paul's Pak, Inc.*, 2010 WL

13 2465044, *4 (N.D. Cal. Jun. 14, 2010); *Goodman v. Kennedy*, 18 Cal. 3d 335, 347 (1976).  A

14 duty may *also* exist where a defendant actively conceals a material fact from the plaintiff *or* when

15 the defendant makes partial representations but also suppresses some material facts.  *LiMandri v.*

16 *Judkins*, 52 Cal. App. 4th 326, 336 (1997) (citing *Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651

17 (1986)).  All three examples are applicable here.

18      In the present case, it was perfectly reasonable for Dr. Heredia to expect full disclosure by

19 Intuitive.  Not only did Intuitive make partial representations regarding DeLeC, but the

20 underlying transaction was a significant purchase of a $2,744,000 piece of equipment.  As such,

21 the facts alleged in the First Amended Complaint plausibly support a finding of Intuitive's duty of

22 disclosure and a motion to dismiss is not the appropriate vehicle for Intuitive to challenge such

23 claims.

24      Accordingly, Intuitive's Motion should be denied as to Dr. Heredia's misrepresentation

25 claims.

26          **4.      Third Claim for Fraudulent Concealment (Direct Liability).**

27      Dr. Heredia's Third Claim for Fraudulent Concealment stems from the fact that Intuitive

28 failed to disclose complaints regarding DeLeC's performance and that Dr. Heredia would not

- 18 -                     DR. HEREDIA'S OPPOSITION TO INTUITIVE
                           SURGICAL INC.'S MOTION TO DISMISS FAC

1   have been willing to do business with DeLeC if such complaints had been properly disclosed.

2   (Dkt. No. 32, ¶¶ 81-88.)  In its Motion, Intuitive claims that Dr. Heredia fails to plead the

3   concealment of a material fact, that Intuitive owed him a duty of disclosure, or that Intuitive acted

4   with fraudulent intent.  As previously discussed herein (*see* Section III-C(3), *supra*) the First

5   Amended Complaint contains specific and plausible allegations as to each of these issues.

6   Intuitive's motion should therefore be denied as to Dr. Heredia's Third Claim for fraudulent

7   concealment.

8   **D.      THIS ACTION MAY PROCEED WITHOUT DELEC**

9          Intuitive's final argument in support of dismissal is another variant of its claim that the

10   theft of $850,000 from *its customer*, Dr. Heredia, by *its agent and exclusive distributor*, DeLeC,

11   is not Intuitive's concern and is not Intuitive's problem.  While Intuitive frames its Rule 19

12   arguments around its apparent desire to protect DeLeC from prejudice, it fails to acknowledge

13   that Dr. Heredia cannot sue Intuitive in Argentina or Bolivia.  There can be no mistake that

14   Intuitive seeks to use Rule 19 to ensure that its foreign customers cannot take legal action against

15   it for this type of dispute—either in the United States or abroad.  More importantly, however,

16   DeLeC is not a necessary party and dismissal pursuant to Fed. R. Civ. P. 19(b) would be

17   inequitable and prevent Dr. Heredia from seeking any meaningful recourse for the damages he

18   has incurred.

19   **1.      DeLeC Is Not A Necessary Party.**

20          In its Motion, Intuitive loses sight of the language of Fed. R. Civ. P. 19(a)(1).  An absent

21   party is necessary where:

        (A)    in that person's absence, the court cannot accord complete relief among
22             existing parties; or

        (B)    that person claims an interest relating to the subject of the action and is so
23             situated that disposing of the action in the person's absence may:

               (i)     as a practical matter impair or impede the person's ability to
24                     protect the interest; or

               (ii)    leave an existing party subject to a substantial risk of incurring
25                     double, multiple, or otherwise inconsistent obligations because of
26                     the interest.

27   Fed. R. Civ. P. 19(a).  As the moving party, Intuitive bears the burden of proving that either of

28   these two elements are met.  This is a showing that Intuitive cannot meet.

a.      The Court Can Accord Complete Relief Among Existing Parties.

Intuitive has not demonstrated that, without DeLeC, the Court cannot "accord complete relief among *existing* parties." *See* Fed. R. Civ. P. 19(a)(1)(A) (emphasis added). Dr. Heredia has sued Intuitive for damages and Intuitive has not so much as implied that it will (or could) seek any relief as against Dr. Heredia. If Dr. Heredia is awarded damages, complete relief will have been provided as between Intuitive and Dr. Heredia. That perhaps Intuitive may pursue an indemnification claim against DeLeC is irrelevant to this inquiry, as it would have no bearing on the relief accorded here. *Clear-View Tech. v. Rasnick*, 2015 WL 1307112, *5 (N.D. Cal. Mar. 23, 2015)[10].

With regard to Intuitive's claim that Dr. Heredia "may simply turn around, file suit in South America [] and seek another bite at the apple," Intuitive fails to explain how this is relevant to the Court's inquiry. Is Intuitive asserting that Dr. Heredia may file suit against *Intuitive* in another country? If so, Intuitive ignores the obvious fact that foreign courts may not have jurisdiction over Intuitive—an issue certainly implicated by Intuitive's burden of proof on the issue. Additionally, if a foreign court *does* have personal jurisdiction over Intuitive, Dr. Heredia could file suit there regardless of whether this action proceeds without DeLeC. Simply put, this lawsuit has nothing to do with it. If, on the other hand, Intuitive is referring to the possibility of Dr. Heredia suing *DeLeC* in a foreign court, that also has nothing to do with whether this Court may accord complete relief as to the "existing parties."

Similarly unfounded is Intuitive's claim that dismissal is necessary because "Dr. Heredia's claims against Intuitive hinge on the conduct of absent party DeLeC." (Dkt. No. 35, 20:2-7.) Intuitive cites *In re Apple iPhone Antitrust Litig.*, 874 F.Supp. 2d 889, 899 (N.D. Cal. 2012) for the proposition that a party is necessary where a court must evaluate its conduct. (*Id.* at 19:21-23.) Absent from the Motion, however, is any acknowledgement that the Ninth Circuit

---

[10] "Defendants allege that they may face a second lawsuit and are at risk of being held solely responsible for liability shared with the absent parties. [] ***These problems can be solved through a second suit for indemnification, if necessary, but do not render the proposed Third Party Defendants necessary parties under Rule 19***, which requires "a legally protected interest, and not merely a financial interest or interest of convenience" in order to find that a party is necessary." (Emphasis added.)

1    essentially[11] reversed and remanded the case with regard to this very issue.  In *Ward v. Apple Inc.*,

2    the Ninth Circuit rejected the proposition upon which Intuitive's argument is based.  *Ward v.*

3    *Apple Inc.*,791 F.3d 1041, 1048 (9th Cir. 2015).  The Ninth Circuit specifically found that

4    whether a court must "evaluate the conduct of an absent party" is not the appropriate inquiry.  *Id*.

5    ("In many cases, an absent antitrust co-conspirator will not have interests that warrant protection

6    under Rule 19(a)(1)(B)(i), even if it is alleged to have played a central role in the conspiracy, and

7    even if resolution of the action will require the court to evaluate the absent party's conduct.").

8    The Ninth Circuit found that the district court abused its discretion by relying on the very

9    argument Intuitive pursues here.  *Id*.

10        At least one district court has already noted that the Ninth Circuit's opinion in *Ward*

11    preempts Intuitive's claims and the authorities upon which it relies (which must also include *In re*

12    *Toyota Motor Corp.*, 785 F.Supp. 883 (C.D. Cal. 2011)).  *See PRM Kauai, LLC v. Gibson*, 2015

13    WL 4878580 (D. Haw. Jul. 23, 2015) (Defendants contend that "the determination of liability for

14    Defendants would necessarily require the evaluation of conduct of [absent persons]. Therefore,

15    under Rule 19(a), [the absent persons] are necessary parties." []  Defendants' reliance on *In Re*

16    *Apple iPhone* is misplaced in light of the Ninth Circuit's recent clarification [in *Ward*].)

17        Accordingly, there exists no credible basis supported by controlling authorities for

18    Intuitive's argument that DeLeC is a necessary party pursuant to Fed. R. Civ. P. 19(a)(1)(A).

19                    b.    DeLeC Does Not Claim Or Possess A Protectable Interest In This
                           Action.

20

21        Intuitive similarly fails to demonstrate under Fed. R. Civ. P. 19(a)(1)(B) that DeLeC

22    "claims an interest relating to the subject of the action" that may be impeded without dismissal of

23    Dr. Heredia's complaint.

24        While not explicitly stated, Intuitive's argument to the contrary appears to be based on its

25    claim that DeLeC was an "active participant" in the alleged fraud and theft.  But despite

26    Intuitive's implied assertions, Rule 19(a) does not mandate that all "active participants" are

27    indispensable parties.  (*See* Dkt. No. 35, 18:17-19.)  To the contrary, "it has long been the rule

28    _____
     [11] As the court noted, the matter came to the Ninth Circuit in an unusual procedural posture.

1   that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."

2   *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1980).[12]

3        Intuitive's unexplained reference to "active participants" in *In re Toyota* does not change

4   this fundamental rule reiterated by the Ninth Circuit less than a year ago.  In *In re Toyota*, the

5   ultimate question before the court was whether a Toyota entity in the United States could be sued

6   by foreign plaintiffs, involving foreign-made cars, sold by foreign non-party entities.  *In re*

7   *Toyota*, 785 F.Supp. 2d at 905-906 ("Plaintiffs do not allege that any of the named Toyota entities

8   manufactured, distributed, and/or sold (or leased) their vehicles. Instead, they allege that the

9   named Defendants "manufacture, design, distribut[e], [sell] and lease [ ] vehicles, having the

10  same [] defect as those Toyota vehicles sold worldwide.")  The court therefore found that the

11  defendant had virtually nothing to do with the claims, and that complete relief could not be afford

12  "***absent an agency or alter ego relationship***."  *Id*. at 906.  Such a relationship is present here.

13       It should also be recognized that the "active participant" language in *In re Toyota* was

14  based on two out of circuit opinions: (1) *Haas v. Jefferson Nat'l Bank of Miami Beach*, 442 F.2d

15  394 (5th Cir. 1971); and (2) *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir.

16  1999).  At least one court in this District has refused to apply *Haas*.  *See Oculus Innovative*

17  *Sciences Inc. v. Nofil Corp.*, 2007 WL 205068 (N.D. Cal. Jan. 25, 2007).[13]  Nor has *Haas* ever

18  been cited in the Ninth Circuit.  *Laker*, on the other hand, was addressed by the Ninth Circuit in

19  *Ward*.  The court recognized that the district court's opinion was heavily reliant upon *Laker* on

20  the very question wherein it found that the district court had abused its discretion.  *Ward*, 791

21  F.3d at 1050, 1053.  And as Intuitive surely knows, this District also recently refused to apply the

22  "active participant" rule of *Laker*.  *See Clear-View*, 2015 WL 1307112 at *4.

23       Turning back to the text of Fed. R. Civ. P. 19(a)(1)(B), Dr. Heredia alleges that DeLeC

24

25  _____

    [12] *See also Ward*, 791 F.3d at 1048; *Clear-View*, 2015 WL 1307112 at *4 ("Plaintiff is correct,
26  however, in stating that joint tortfeasors and alleged co-conspirators are not indispensable parties
    for purposes of Rule 19."); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 228839,
27  *13 (N.D. Cal. Aug. 9, 2007).

    [13] "[Considering the "active participant" test set forth in *Haas* and finding] [t]here is no such
28  exception in the Ninth Circuit. The Court must therefore follow *Temple*, and find that [the non-
    party] is not a necessary or indispensable party to plaintiff's tort claims."

DR. HEREDIA'S OPPOSITION TO INTUITIVE
SURGICAL INC.'S MOTION TO DISMISS FAC

1   has made no effort of any kind to justify its theft of Dr. Heredia's funds.  That is, he has not

2   "claim[ed] an interest" in this action.  (*See* Dkt. No. 32, ¶¶ 71-76.)  Intuitive presents absolutely

3   no *evidence*[14] to the contrary.  Controlling authorities are clear, however, that ***Intuitive must***

4   ***affirmatively demonstrate that DeLeC*** <u>***asserts***</u> ***an interest in this action***.  *See U.S. v. Bowen*, 172

5   F.3d 682 (9th Cir. 1999) ("Joinder is 'contingent ... upon an initial requirement that the absent

6   party *claim* a legally protected interest relating to the subject matter of the action.'") (emphasis in

7   original) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.

8   1983).  In *Bowen*, the court made perfectly clear that a non-party's interest under Fed. R. Civ. P.

9   19(a)(1)(B) will not be presumed—an active and actual assertion of the interest is required.  *Id.*[15]

10  Nor can Intuitive claim an interest on DeLeC's behalf.  *See U.S. ex rel. Morongo Band of Mission*

11  *Indians v. Rose*, 4 F.3d 901, 908 (9th Cir. 1994); *Lopez v. Fed. Nat. Morg. Ass'n*, 2013 WL

12  7098634 (C.D. Cal. Oct. 8, 2013).

13         That DeLeC has not claimed an interest in this action is fatal to Intuitive's arguments

14  under Fed. R. Civ. P. 19.  However, Intuitive has also failed to establish what interest it seeks to

15  claim on DeLeC's behalf.  Intuitive seems to imply that DeLeC might be prejudiced in a

16  subsequent indemnification lawsuit *by Intuitive*.  Yet a potential indemnification action is

17  irrelevant (*see Clear-View Tech.*, 2015 WL 1307112 at *5); as is the potential for joint and

18  several liability.  *See Mintel*, 2007 WL 2288329 at *13 (noting that a tortfeasor with joint and

19  several liability is "merely a permissive party").  Intuitive also raises the issue of DeLeC's

20  reputational interests.  Intuitive provides no support for this hypothetical "interest" and it should

21  be rejected.  Indeed, a rule that un-claimed reputational interests of non-parties render them

22  "indispensable" would nullify virtually all of the authorities referenced herein.  *See Powers v.*

23  *City of Seattle*, 242 F.R.D. 566, 568 (W.D. Wa. 2007).

24         Accordingly, Intuitive has failed to demonstrate that DeLeC is a necessary party under

25

26  ─────────────────────────

    [14] Again, Intuitive bears the burden of proof on this issue and must present affirmative evidence.
    *See Mintel*, 2007 WL 2288329 at *13.

27  [15] *See also Ward*, 791 F.3d at 1051 (considering whether a declaration by the non-party "satisfies
    *Bowen*'s requirement."); *In re Wells Fargo Resid. Mort. Lending Discrimination Litig.*, 2009 WL

28  2473684 (N.D. Cal. Aug. 11, 2009).

1   Fed. R. Civ. P. 19(a)(1)(B)(i).

2          c.    <u>This Action Does Not Leave Intuitive Subject To The Risk Of Incurring Inconsistent Obligations.</u>

3

4          Intuitive's only argument regarding Fed. R. Civ. P. 19(a)(1)(B)(ii) "inconsistent

5   obligations" requirement is that perhaps Intuitive will sue DeLeC in Argentina on an

6   indemnification theory.  (Dkt. No. 35, 21: 5-13.)  As explained by the court in *Clear-View*, this is

7   irrelevant.  *See Clear-View Tech.*, 2015 WL 1307112 at *5.  Nor is there any possible

8   interpretation of Intuitive's hypothetical under which it could be "unable to comply with one

9   court's order without breaching another court's order concerning the same incident."  *See Cachil

10  Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. Cal.*, 547 F.3d 962, 976 (9th Cir.

11  2008).

12          **2.    Dismissal Of This Action Pursuant to Rule 19(b) Would Be Inequitable.**

13          Having failed to demonstrate either that this Court cannot accord complete relief as

14  between Dr. Heredia and Intuitive, or that DeLeC has *claimed* an interest in this action, the Court

15  need not assess Intuitive's arguments under Rule 19(b).  In any event, these claims fail for many

16  of the same reasons discussed in Section III-D(1), *supra*.  *See Am. Greyhound Racing, Inc. v.

17  Hull*, 305 F.3d 1015 (9th Cir. 2002) (noting that analysis under Rule 19(a) and Rule 19(b) are

18  often identical).

19          As explained above, DeLeC has not asserted a claim in this action.  Intuitive cannot rely

20  on speculation as to whether DeLeC is aware of this litigation, as it still does business with

21  DeLeC, has not alleged that it has *not* informed DeLeC, and has not presented any evidence or

22  argument as to DeLeC's lack of knowledge.  Nor has DeLeC expressed any concern regarding the

23  potential for reputational harm Intuitive references in its Motion.  (*See* Dkt. No. 32, ¶¶ 71-76.)

24  Here, Intuitive is simply raising hypothetical concerns of prejudice against DeLeC in order to

25  protect its own interests.

26          The facts presented here are worlds apart from those at issue in *In re Toyota*, where the

27  fundamental question was whether the non-parties' products were safe, and differences between

28  the various products (made by various defendants and non-parties) could be paramount.  *See In re*

1     *Toyota*, 785 F.Supp. 2d at 905-906.  Additionally, in *Paiute-Shoshone Indians of Bishop Cmny. of*

2     *Bishop Colony, Cal. v. City of Los Angeles*, the court's finding of prejudice was based in large

3     part on the fact that the relief sought could estop the non-party from challenging the finding.

4     *Paiute-Shoshone*, 637 F.3d 993, 1001 (9th Cir. 2011).

5          Intuitive has also failed to demonstrate that its own speculative claims of prejudice

6     override the prejudice Dr. Heredia would face if he was denied any ability to hold Intuitive

7     responsible for the claims alleged in the First Amended Complaint.  The Ninth Circuit has held

8     that a plaintiff's lack of alternative forum is of critical importance.  *Anrig v. Ringsby United*, 603

9     F.2d 1319, 1326 (9th Cir. 1978).  Here, there exists no other forum in which Dr. Heredia can

10    pursue its claims against Intuitive—including those claims not predicated on agency liability.

11         With regard to Intuitive's alleged difficulties obtaining evidence, it is undisputed that

12    Intuitive and DeLeC continue to have an ongoing business relationship—Intuitive's website still

13    lists DeLeC as an exclusive distributor.  Additionally, Intuitive has already threatened to sue

14    DeLeC for indemnification.  (*See* Dkt. No. 37-3.)  This clearly implies that the written agreement

15    between Intuitive and DeLeC says more about this issue than has been disclosed.[16]  At a

16    minimum, Intuitive's threat demonstrates that DeLeC will have ample motivation to cooperate

17    with Intuitive's discovery efforts.  As such, Intuitive's conjecture is insufficient to satisfy its

18    burden of proof.  This is particularly true where, as here, Intuitive's hypothetical claims of

19    prejudice would essentially nullify that well-recognized rule that joint tortfeasors and agents are

20    generally permissive parties.

21    **IV.**    <u>**CONCLUSION**</u>

22         For the foregoing reasons, Dr. Heredia respectfully requests that the Motion be denied in

23    its entirety.

24

25

26

27

28

---

[16] Notably, courts have withheld judgment on Rule 19 motions, or dismissed them with prejudice, where discovery is necessary to test the existence of an agency relationship.  *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.,* 456 F.Supp. 831, 847 (D.Del.1978); *Edible Arrangements, LLC v. Provide Commerce, Inc.*, 2015 WL 1321441, at *4 (D. Conn. Mar. 24, 2015).

1   Dated:  January 28, 2016                    SCHIFF HARDIN LLP

2

3                                          By: /s/ Jean-Paul P. Cart
                                               John S. Worden
4                                              Jean-Paul P. Cart
                                               Attorneys for Plaintiff
5                                              Rene Heredia

6   47088-0000
    SF\321723397.2
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 26 -      DR. HEREDIA'S OPPOSITION TO INTUITIVE
                                                SURGICAL INC.'S MOTION TO DISMISS FAC