UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RENE HEREDIA,<br><br>    Plaintiff,<br><br>    v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>    Defendant. | Case No. 5:15-cv-02662-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 35 |

## I. INTRODUCTION

Plaintiff Rene Heredia ("Dr. Heredia") is a Bolivian doctor who contracted to purchase a surgical device known as the da Vinci system (the "Device"). The Device is made by Defendant Intuitive Surgical, Inc.'s ("Intuitive"). The sales transaction was never completed and Dr. Heredia received a partial refund of the payments he made for the Device. Dr. Heredia filed the instant action to recover the balance of his payments, which totals $850,000. Presently before the Court is Intuitive's motion for summary judgment. The motion was heard on April 26, 2018. For the reasons set forth below, Intuitive's motion is granted.

## II. BACKGROUND

Dr. Heredia is a urologist and surgeon practicing in Santa Cruz, Bolivia. Dr. Heredia learned of the Device while attending a medical conference. Intuitive's representatives told Dr. Heredia that he would need to purchase the Device "through Intuitive's agent and exclusive distributor for Bolivia, DeLeC Cientifica Argentina SA ('DeLeC [Argentina]')." Heredia Decl., ¶2. The president of DeLeC Argentina, Carlos Lecour ("Lecour"), visited Dr. Heredia's clinic in

Bolivia and gave a presentation and provided marketing and performance literature about the Device to Dr. Heredia. Id., ¶3. The literature identified DeLeC Argentina as the exclusive distributor for Intuitive in Argentina, Uruguay, Paraguay and Colombia. Dkt. 88-2, p. 16. In one document Lecour is identified as the "Presidente" of both DeLeC Argentina and another entity, DeLeC Cientifica Uruguay SA ("DeLeC Uruguay"). Id.

Dr. Heredia agreed to structure the purchase of the Device through Trimedical Bolivia ("Trimedical"), as Intuitive and Lecour directed. Heredia Decl., ¶4. In July of 2012, Dr. Heredia entered into a Purchase and Sale Agreement for the Device with Trimedical.[1] Dkt. 82-3. Dr. Heredia made a few installment payments to Trimedical. In 2013, however, Dr. Heredia learned that Trimedical "had misappropriated" his funds. Heredia Decl., ¶4. Dr. Heredia ceased making payments and initiated legal action in three separate courts to recover the funds he had paid for the Device. Dr. Heredia pursued legal action against Trimedical in Bolivia; (2) against DeLeC Argentina and Lecour in Florida; and (3) against Intuitive in this district.

A. Dr. Heredia's Proceedings in Bolivia

On February 4, 2014, Dr. Heredia initiated criminal proceedings through the Bolivian Public Prosecutor against Trimedical's officers, accusing them of the crime of "aggravated swindling" pursuant to Bolivian Criminal Code section 335. Dkt. 82-3 (Cashman Decl. Ex. 1 at §3.1). The Bolivian authorities investigated the claims and ultimately determined that there was no basis to conclude that any crime had been committed. See id.

Dr. Heredia and Trimedical subsequently sued one another over their contractual dispute and Dr. Heredia's role in prompting the criminal proceedings. The parties ultimately executed a settlement agreement. Dkt. 82-3. The settlement agreement, which has been translated from Spanish to English, includes the following recitals:

> 2.1 On June 10, 2012, the parties executed a Purchase and Sale Agreement of Medical Equipment for Surgical Assistance (new), in the freely agreed upon amount of

---

[1] The Court previously took judicial notice of the Trimedical sales agreement when ruling on Intuitive's motion to dismiss, and does so again.

2
Case No.: 5:15-cv-02662-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

> USD 2,744,000, which, pursuant to the provisions agreed upon in the Agreement, were to be paid by the Buyer (the PHYSICIAN) in advance[], in cash.
>
> 2.2. Of the total agreed upon price, as per Clause 3 of the Master Agreement, PHYSICIAN paid in installments to TRIMEDICAL the amount of USD 2,096,000 (two million ninety six United States dollars), leaving an outstanding balance to date of USD 648,000 (six hundred forty eight thousand United States dollars).
>
> 2.3. Between the months of August 2012 and April 2013, TRIMEDICAL used the installment payments made by Physician (Dr. René Heredia Heredia) to make four deposits in favor of a provider named DELEC S.A., as installment payments for the purchase of the Medical Equipment described above, which amounted to USD 850,000 (eight hundred fifty thousand United States dollars).
>
> 2.4 The Master Agreement established that the payment for the purchase of the medical equipment was to be made in cash, however, the PHYSICIAN (Buyer) only paid (in installments) the amount of USD 2,096,000 (two million ninety six thousand United States dollars), since the PHYSICIAN himself decided not to continue with the purchase of the equipment by exclusively professional and investment-related reasons, since the equipment was, as stated by the Physician/Buyer, no longer economically profitable for his professional projects.
>
> 2.5 On November 11, 2013, at the request of Dr. René Heredia Heredia, TRIMEDICAL refunded USD 250,000 (two hundred fifty thousand United States dollars), in favor of the Physician (Dr. René Heredia Heredia). On February 13, 2014, at the request of Dr. René Heredia Heredia, TRIMEDICAL refunded USD 300,000 (three hundred fifty thousand [sic] United States dollars), in favor of the Physician (Dr. René Heredia Heredia), since the latter decided not to purchase the medical equipment, adding up to a total amount of USD 550,000 (five hundred fifty thousand United States dollars).
>
> 2.6 The money deposited to DELEC S.A. of USD 850,000 is being currently withheld by said provider, since the decision not to purchase the medical equipment described in Clause 2 of the Master Agreement has raised a difference of opinions between Trimedical and the Physician. This fact is acknowledged and accepted by both parties.
>
> 2.7 To date, the partial amount submitted by the Physician to TRIMEDICAL, the latter only holds USD 696,000 (six hundred ninety six thousand United States dollars), due to the fact that the amount of USD 550,000 (five hundred fifty thousand United States dollars) was reimbursed to the Physician (refer to section 2.5) and the amount of USD 850,000 (eight hundred fifty thousand United States dollars) are held by provider DELEC S.A. (refer to sections 2.3 and 2.6).
>
> \* \* \*
>
> 4.2.2 <u>Money held by DELEC S.A.</u> The PHYISICIAN agrees and acknowledges that due to his failure and subsequent decision not to purchase the equipment subject matter of the Master Agreement, provider DELEC S.A. has withheld the partial payment made by TRIMEDICAL (Refer to sections 2.3 and 2.6).

Dkt. 82-3, pp. 2-3, 4.[2] Notably, wire transfers produced in the Bolivian proceedings show that the

---

[2] Dr. Heredia contends that the settlement agreement is unauthenticated and therefore should not

1  $850,000 at issue in the present lawsuit was paid to DeLeC Uruguay—not DeLeC Argentina.

2  Dkt. 82-3, pp .23-26 (Cashman Decl. Ex. 4).[3]

3  B. Dr. Heredia's Florida Lawsuit

4  In the Florida action, Dr. Heredia named DeLeC Argentina and Lecour as defendants and
5  asserted claims for conversion, breach of contract and fraud arising out of the same acts as alleged
6  here. Dkt. 82-3, pp. 39-49 (Cashman Decl. Ex. 5). DeLeC Argentina and Lecour moved to
7  dismiss the complaint. Lecour submitted a sworn declaration in support of the motion stating that
8  neither Lecour nor DeLeC Argentina ever entered into an agreement with Dr. Heredia; that neither
9  Lecour nor DeLeC Argentina ever received any money from Dr. Heredia; that Trimedical
10  purchased the Device from DeLeC Uruguay; that DeLeC Uruguay is separate and distinct from
11  DeLeC Argentina; and that Lecour is not an officer of DeLeC Uruguay. Id. (Ex. 6 ¶¶21-25).[4]

12  C. Proceedings In This Court

13  Dr. Heredia initiated this suit in 2015, asserting claims for both direct and vicarious
14  liability based on the alleged conduct of DeLeC Argentina. The Court dismissed the complaint

---

be considered in ruling on Intuitive's summary judgment motion. Dkt. 88 (Dr. Heredia's Opposition, pp. 4-5). Dr. Heredia's argument is unpersuasive. To satisfy the requirement of authentication, Federal Rule of Evidence 901 requires the proponent to produce evidence sufficient to support a finding that the item is what the proponent claims it is. Dr. Heredia's counsel provided the settlement agreement to Intuitive's counsel in response to a request for copies of all documents and pleadings associated with Dr. Heredia's legal proceedings in Bolivia. Dkt. 82-2 (Cashman Decl., ¶2). Moreover, Dr. Heredia has not contended that the agreement is not authentic.

[3] Dr. Heredia contends that the evidence of wire transfers to DeLeC Uruguay is unauthenticated and should not be considered. Here, Intuitive's counsel represents that Dr. Heredia's counsel gave the evidence to Intuitive's office in response to Intuitive's request for copies of all documents and pleadings associated with Dr. Heredia's legal proceedings in Florida. Dkt. 82-2, p. 2 (Cashman Decl., ¶5). Accompanying the evidence of wire transfers is a translated copy of a letter from Bladimir Pantoja G. to the Specialized Prosecutor assigned to the criminal case in Bolivia, stating that he is submitting the evidence in compliance with the Bolivia court's order. Dkt. 82-3. Bladimir Pantoja G. signed the settlement agreement on behalf of Trimedical. The declaration of Intuitive's counsel, the letter and the settlement agreement are sufficient to authenticate the wire transfers.

[4] Dr. Heredia contends that the Court should disregard Lecour's declaration because it contains at least one falsehood--that Lecour is not an officer of DeLeC Uruguay. Dr. Heredia's objection to Lecour's declaration is overruled. The Court's function on a summary judgment motion is not to make credibility determinations. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

4
Case No.: 5:15-cv-02662-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

with leave to amend and Dr. Heredia filed an amended complaint ("FAC") (Dkt. 32) which alleges that Intuitive is vicariously liable for fraud and conversion committed by DeLeC Argentina. Intuitive answered and filed a third party complaint against DeLeC Argentina, DeLeC Uruguay and Trimedical for declaratory relief, equitable indemnity and contribution.

## III.  STANDARDS

A motion for summary judgment or partial summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. Id. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come

forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

## III. DISCUSSION

A. Conversion

Dr. Heredia alleges that Intuitive converted the $850,000 at issue. Conversion is the "wrongful exercise of dominion over the property of another." Welco Elecs., Inc. v. Mora, 223 Cal.App.4th 202, 208 (2014). To state a claim for conversion under California law, a plaintiff must plead the following elements: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Id. For the first element, the plaintiff must establish a legal right to "immediate possession" of the funds or property at issue. In re Baily, 197 F.3d 997, 1000 (9th Cir. 1999); see also Farmers Ins. Exchange v. Zerin, 53 Cal.App.4th, 452 (1997). For the second element, while "[i]t is not necessary that there be a manual taking of the property," the plaintiff must show "an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Messerall v. Fulwider, 199 Cal. App. 3d 1324, 1329 (1988).

As to the first element of conversion, Dr. Heredia has not presented sufficient evidence to raise a triable issue of fact regarding the right to immediate possession of the $850,000. Dr. Heredia's contract with Trimedical does not contain any provisions regarding refunds. Furthermore, the settlement agreement negates any right to immediate possession of the $850,000. According to the recitals in the settlement agreement, the $850,000 is being "withheld" because "the decision not to purchase the [Device] has raised a difference of opinions between Trimedical and the Physician. This fact is acknowledged and accepted by both parties." Dkt. 82-3, pp. 2-3. The settlement agreement also recites that the funds are being withheld because of Dr. Heredia's

6
Case No.: 5:15-cv-02662-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

"failure and subsequent decision not to purchase" the Device. Dkt. 82-3, p. 4. In the absence of a contractual right to a refund and the express acknowledgments in the settlement agreement, a reasonable jury could not find that Dr. Heredia has a legal right to immediate possession to the $850,000.

Dr. Heredia has also failed to present sufficient evidence to raise a triable issue as to the second element of conversion. There is no evidence that DeLeC Argentina converted the $850,000 by a wrongful act. Dr. Heredia contracted with Trimedical, and Trimedical in turn contracted with DeLeC Uruguay for the purchase of the Device. Trimedical transferred Dr. Heredia's payments for the Device to DeLeC Uruguay (and not DeLeC Argentina) pursuant to the terms of the parties' subcontract. Thus, DeLeC Uruguay received Dr. Heredia's payments pursuant to contract and not through any wrongful act. Nor can the continued retention of the funds be characterized as a wrongful act in light of the recitals in the settlement agreement. Moreover, there is no evidence that DeLeC Argentina had any role in, much less directed or otherwise caused DeLeC Uruguay to retain the funds. Lecour's alleged involvement in both DeLeC Argentina and DeLeC Uruguay, without more, is insufficient to establish conversion of the funds by a wrongful act.

Despite the recitals in the settlement agreement, Dr. Heredia denies having "a 'change of heart' that caused him to 'back out' of his agreement to purchase the Device." Dkt. 88 (Dr. Heredia's Opposition, p. 3). Dr. Heredia explains that prior to learning about the alleged misappropriation, he had every intention of completing the purchase. Heredia Decl., ¶8. Dr. Heredia contends that Trimedical breached the agreement, which "led to litigation and delays lasting over a year and a half, thereby dramatically changing the economics of any new deal to purchase the [Device]." Id. Dr. Heredia also contends that prior to executing the settlement, DeLeC Argentina and Lecour told him that DeLeC Argentina would return the $850,000 once it received approval from Trimedical. Heredia Decl., ¶6. 2.6. The rationale and reasonableness of Dr. Heredia's conduct, however, are not relevant. To defeat Intuitive's summary judgment motion, Dr. Heredia must raise a triable issue as to each of the three elements of conversion, which he has

7
Case No.: 5:15-cv-02662-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1 not done. Dr. Heredia's acknowledgment in the settlement agreement --that he chose to
2 discontinue with the purchase of the Device, which raised a difference of opinions –is dispositive
3 for the reasons discussed above. Intuitive is entitled to summary judgment on the conversion
4 claim.

B. Fraud

Dr. Heredia asserts several fraud-based claims, the substance of which is that DeLeC Argentina never intended to honor Dr. Heredia's agreement with Trimedical to purchase the Device but secretly intended to misappropriate any funds it received toward the purchase. He seeks to hold Intuitive vicariously liable for the conduct of DeLeC Argentina.

The elements of fraudulent misrepresentation in California are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997). The elements of negligent misrepresentation are similar except that a plaintiff need not show that the defendant knew of the falsity of the statement, but rather that the defendant lacked reasonable ground for believing the statement to be true. McReynolds v. HSBC Bank USA, No. 5:11-cv-05245 EJD, 2012 U.S. Dist. LEXIS 165219, at *6, 2012 WL 5868945 (N.D. Cal. Nov. 19, 2012). "The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." Graham v. Bank of Am., N.A., 226 Cal. App. 4th 594, 606 (2014).

Here, there is no evidence that DeLeC Argentina intended to defraud or to induce reliance at the time the alleged misstatement was made. There is also no evidence that DeLeC Argentina made a negligent misrepresentation. Fraud cannot be inferred from the fact that DeLeC Argentina did not deliver the Device because Dr. Heredia decided not to continue with the purchase of the

8

Case No.: 5:15-cv-02662-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Device. Nor can fraud be inferred from the fact that DeLeC Uruguay retains the funds at issue. As discussed previously, Dr. Heredia acknowledged in the settlement agreement the funds at issue are being withheld "due to his failure and subsequent decision not to purchase the equipment." Dkt. 82-3, p. 2.

Furthermore, there is no evidence that DeLeC Argentina's alleged fraud caused damages. Once again, the settlement agreement makes clear that Dr. Heredia chose to discontinue with the purchase. In response, Dr. Heredia contends that there is a triable issue of fact as to whether he breached the purchase agreement by discontinuing the payments. Whether Dr. Heredia breached the contract is irrelevant, however. That he chose to discontinue with the purchase of the Device precludes a finding that DeLeC Argentina's alleged fraud caused damages. Intuitive is entitled to summary judgment on the fraud claim.

C. Dr. Heredia's Request for Discovery

Dr. Heredia requests that the Court defer ruling on the summary judgment pursuant to Rule 56(d), Fed.R.Civ.P., so that he may investigate the relationship between DeLeC Argentina and DeLeC Uruguay. Dr. Heredia's FAC, however, does not include any allegations to support a theory of liability based upon piercing the corporate veil. Furthermore, to obtain postponement of a summary judgment motion, a party must show the following: facts indicating a likelihood that controverting evidence exists as to a material fact; specific reasons why such evidence was not discovered or obtained earlier; the steps or procedures by which the opposing party proposes to obtain such evidence; and an explanation of how those facts will suffice to defeat the summary judgment motion. Tatum v. City & County of San Francisco, 441 F.3d 1090, 1101 (9th Cir. 2006). Dr. Heredia has not made the requisite showings. In particular, Dr. Heredia has not shown that he has been diligent in pursuing the discovery he now seeks. Dr. Heredia's Rule 56(d) request is denied.

IV. CONCLUSION

For the reasons set forth above, Intuitive's motion for summary judgment is GRANTED. No later than May 18, 2018, Intuitive shall file and serve an updated status conference statement

9

Case No.: 5:15-cv-02662-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

setting forth the status of its proceedings against the third party defendants.

**IT IS SO ORDERED.**

Dated: May 1, 2018

_____
EDWARD J. DAVILA
United States District Judge